

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| | § | |
| MANUEL ZARAGOZA AND | | No. 08-14-00260-CV |
| ELOISA ZARAGOZA, | § | |
| | | Appeal from |
| Appellants, | § | |
| | | 243rd District Court |
| v. | § | |
| | | of El Paso County, Texas |
| GUNNAR JESSEN AND | § | |
| ELIZABETH JESSEN, | | (TC # 2011-1569) |
| | § | |
| Appellees. | | |
| | § | |

## **O P I N I O N**

This is an appeal from a final judgment after a bench trial in which the trial court awarded Appellees, Elizabeth and Gunnar Jessen, actual damages in the amount of $131,277, punitive damages totaling $25,000, and attorney's fees, interest, and costs. For the reasons that follow, we affirm.

## **FACTUAL BACKGROUND**

Appellants, Eloisa Zaragoza and her husband, Manuel Zaragoza, owned a home located at 704 Dorsey in El Paso, Texas. Mrs. Zaragoza currently maintains her real estate license, but for a period of five years, from 2003 to 2008, she worked as a hair stylist at a salon and day spa owned by Mrs. Jessen. The Jessens' daughter, Jessica Ramirez, also worked for a period of time at her mother's salon and day spa. Jessica suffered from serious health issues which caused her

financial difficulty. As a result, she was unable to afford housing for herself and her three children. Accordingly, the Jessens searched for a house to buy for Jessica. The Jessens believed it was better for them to purchase a house for their daughter so that she could pay them rent and in the event she could not make rental payments, the Jessens would be able to cover the payments. The Zaragozas offered to sell the Jessens the Dorsey Home. During trial, the parties disputed whether Jessica was involved in the negotiations.

Two documents were admitted into evidence describing the terms of the sale. The Jessens offered the first document ("Document 1"), dated June 15, 2007. Mrs. Jessen testified that she and Mrs. Zaragoza prepared Document 1. Document 1 required the Jessens to pay $107,000 as the purchase price. Mrs. Jessen specifically testified that Jessica was not part of these negotiations with the Zaragozas. Document 1 was not signed by the parties. Despite the parties' failure to sign Document 1, the Jessens complied with its terms and ultimately paid over $107,000 for the Dorsey Home. Document 1 additionally required that the Jessens pay the Zaragozas a significant down payment of $73,010 and assume payment of the first mortgage on the property held by Regions/EverHome.[1] The Regions/EverHome mortgage had a remaining balance of $33,990.00. Document 1 further required that on January 18, 2007, the Zaragozas utilize $34,000 of the Jessens' $73,010 down payment to pay off a second mortgage held by Beneficial. Mrs. Jessen testified that the Zaragozas agreed to deed the Dorsey Home to them once they paid the Regions/EverHome mortgage. The Zaragozas introduced a similar document at trial, also dated June 15, 2007 ("Document 2"). Document 2 differed from Document 1 in that it appeared to be a contract between Jessica and the Zaragozas, not between the Jessens and the Zaragozas. Mrs. Jessen testified that she had never seen Document 2 until the day of the trial.

---

[1] The name of Regions Mortgage changed to EverHome Mortgage for reasons unknown from the record. Accordingly, we will refer to this first lien on the Dorsey Home as the Regions/EverHome mortgage.

Document 2 contained a provision that required Jessica to obtain other financing within one year from the date of the contract. The Zaragozas signed Document 2 but neither the Jessens nor Jessica did so. On June 18, 2007, the Jessens tendered a cashier's check for the down payment to the Zaragozas, which the Zaragozas endorsed and deposited into their bank account. The Zaragozas immediately turned possession of the house over to the Jessens. The Jessens subsequently made improvements and renovations totaling $9,717.41.

On September 9, 2009, the Jessens paid the $33,990.00 Regions/EverHome mortgage in full and Regions/EverHome released the lien. The Jessens asked the Zaragozas to deed the house to them as they represented they would do. The Zaragozas did not do so. Nor did the Zaragozas pay off the second $34,000 Beneficial mortgage as required under both Document 1 and Document 2. In fact, the Zaragozas never disclosed this information to the Jessens and in April of 2010, the Jessens apparently discovered on their own that the Beneficial mortgage still encumbered the house. According to Mrs. Jessen, this was the first time that she and her husband realized that the Zaragozas lied to them. Also included in the Regions/EverHome mortgage payments were taxes and insurance escrow for the Dorsey house. Once the Jessens paid off the Regions/EverHome mortgage, these escrow funds were reimbursed back to the Zaragozas because they still held title. Because the Zaragozas did not distribute these funds, the Jessens personally paid the 2009 property taxes, despite the fact that the escrow funds were readily available.

On August 6, 2010, the Jessens' attorney sent a formal written demand to the Zaragozas to either deed the house to the Jessens unencumbered or return the money they had paid. Mrs. Zaragoza testified at trial that instead of paying off the $34,000 Beneficial mortgage, she used the Jessens' $73,010 down payment to first invest in a certificate of deposit, then purchase a

3

truck for their son and pay for some personal living expenses while her mother was ill. The Zaragozas did not pay the Beneficial mortgage until 2013, two years after the Jessens filed suit.

Unrelated to the Dorsey Home transaction, the Zaragozas asked to borrow $5,000 from the Jessens on January 13, 2010. The Zaragozas told the Jessens they would pay them back within thirty days. The Jessens loaned the Zaragozas the $5,000 but were never repaid in full.

In 2011, the Jessens sued the Zaragozas. After several amended petitions, the Jessens ultimately asserted claims for breach of contract and fraud in a real estate transaction, and sought to recover damages related to the real estate transaction, collection of the separate $5,000 loan, attorney's fees, punitive damages, interest, and costs. At the conclusion of the bench trial, the trial court issued findings of fact and conclusions of law in which it found that despite the fact that the parties did not have a signed contract, the Jessens had a viable breach of contract claim against the Zaragozas under the doctrine of substantial performance of an oral contract; the Zaragozas breached the contract to sell and deed the Dorsey Home to the Jessens; the Zaragozas committed fraud in a real estate transaction; and due to the Zaragozas' fraudulent and malicious conduct, the Jessens were entitled to recover punitive damages and reasonable attorney's fees. The trial court ultimately awarded judgment to the Jessens for $131,277 of actual damages, punitive damages in the amount of $25,000, attorney's fees, interest, and costs. This appeal follows.

The Zaragozas initially presented several arguments within their first issue challenging many of the trial court's findings of facts and conclusions of law. However, in their actual argument section, they fail to actually argue most of those initial assertions. Therefore, according to our understanding of their brief, we identify the following issues: (1) whether the trial court erred in determining that the Jessens had standing; (2) whether the trial court erred in

4

not allowing the Zaragozas to present a statute of frauds defense and as a result, determined that the Zaragozas breached their contract after the Jessens rendered full compliance with the terms of the contract; (3) whether the evidence supports the finding that the Zaragozas committed fraud in a real estate transaction; and (4) and whether the trial court erred in denying the Zaragozas' motion for new trial.

## STANDARDS OF REVIEW

### Findings of Fact

Unchallenged findings of fact are binding on an appellate court unless the contrary is established as a matter of law or there is no evidence to support the finding. *In re K.R.P.*, 80 S.W.3d 669, 673 (Tex.App.--Houston [1st Dist.] 2002, pet. denied); *Waggoner v. Morrow*, 932 S.W.2d 627, 631 (Tex.App.--Houston [14th Dist.] 1996, no writ); *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986). Challenged findings have the same force and dignity as a jury's verdict upon questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). The evidence supporting them is thus reviewable for legal and factual sufficiency by the same standards as evidence supporting a jury's answer. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Spiller v. Woodard*, 809 S.W.2d 624, 627 (Tex.App.--Houston [1st Dist.] 1991, no writ); *MCZ, Inc. v. Smith*, 707 S.W.2d 672, 678 (Tex.App.--Houston [1st Dist.] 1986, writ ref'd n.r.e.).

### Conclusions of Law

The trial court's conclusions of law are always reviewable. *Westech Eng'g, Inc. v. Clearwater Constructors, Inc., a Div. of Phelps, Inc.*, 835 S.W.2d 190, 196 (Tex.App.--Austin 1992, no writ). Conclusions of law will be upheld on appeal if the judgment can be sustained on

any legal theory supported by the evidence. *Id.* Incorrect conclusions of law will not require reversal, however, if the controlling findings of fact will support a correct legal theory. *Id.*

## STANDING

The Zaragozas first argue that the Jessens lack standing to bring the lawsuit. This allegation is premised upon the Zaragozas' claim that Jessica, rather than her parents, was the actual party to the contract. To support this contention, the Zaragozas rely on Mrs. Zaragoza's testimony as well as Document 2 which purports to illustrate that a contract existed between the Zaragozas and Jessica.

Standing focuses on the question of who may bring an action. *See Patterson v. Planned Parenthood of Houston & Southeast Texas, Inc.*, 971 S.W.2d 439, 442 (Tex. 1998). Standing is a component of subject-matter jurisdiction and is necessary to maintain a lawsuit. *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 309 (Tex. 2008); *Dixon v. Bank of New York Mellon*, No. 08-13-00317-CV, 2015 WL 6768694, at *2 (Tex.App.--El Paso Nov. 5, 2015, no pet.). We review standing under the same standard by which we review subject-matter jurisdiction generally. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). Whether the trial court has subject-matter jurisdiction is a question of law that we review *de novo*. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

A person has standing to sue if: (1) he has sustained, or is immediately in danger of sustaining, some direct injury as a result of the wrongful act of which he complains; (2) he has a direct relationship between the alleged injury and claim sought to be adjudicated; (3) he has a personal stake in the controversy; (4) the challenged action has caused the plaintiff some injury in fact, either economic, recreational, environmental, or otherwise; (5) or he is an appropriate party to assert the public's interest in the matter as well as his own interest. *Taylor v. Margo*,

6

No. 08-14-00066-CV, 2015 WL 5449806, at *9 (Tex.App.--El Paso Sept. 16, 2015, pet. denied) (not designated for publication); *Nauslar v. Coors Brewing Co.*, 170 S.W.3d 242, 249 (Tex.App.--Dallas 2005, no pet.); *City of Bells v. Greater Texoma Utility Authority*, 744 S.W.2d 636, 639 (Tex.App.--Dallas 1987, no writ).

Clearly, the Jessens have standing. There is ample evidence in the record to support such a finding. While some of Mrs. Zaragoza's testimony may have conflicted with Mrs. Jessen's testimony, it was within the realm of the fact finder to resolve such conflicts. *See Barrientos v. Nava*, 94 S.W.3d 270, 288 (Tex.App.--Houston [14th Dist.] 2002, no pet.)(The trial court is the sole judge of the credibility of the witnesses and the weight to be given to their testimony.). The record reflects that the Jessens paid $107,000 directly to the Zaragozas for the Dorsey Home. The Zaragozas falsely represented to the Jessens that they would deed the house to the Jessens once they made the $73,010 down payment and paid off the Regions/EverHome mortgage. Based on these representations, the Jessens took possession of the home, paid the 2009 property taxes, spent over $9,000 on repairs and improvements, and paid off the Regions/EverHome mortgage. After doing so, the Zaragozas still refused to deed the property to the Jessens. The Jessens also loaned the Zaragozas $5,000 which was never fully repaid.

Moreover, as the Jessens correctly point out in their brief, if the Zaragozas are claiming that the Jessens were not parties to the contract, then such a claim is not actually a standing claim that deprives the court of jurisdiction, but rather goes to the merits of the case. *See Heartland Holdings, Inc. v. U.S. Trust Co. of Tex., N.A.*, 316 S.W.3d 1, 7 (Tex.App.--Houston [14th Dist.] 2010, no pet.)(explaining that while the question of whether a party is entitled to sue on a contract is often informally referred to as a question of "standing," it is not truly a standing issue because it does not affect the jurisdiction of the court; it is, instead, a decision on the merits);

7

*Yasuda Fire & Marine Ins. Co. v. Criaco*, 225 S.W.3d 894, 898 (Tex.App.--Houston [14th Dist.] 2007, no pet.). The record supports a finding that the Zaragozas and the Jessens had an agreement for the sale of the house. The evidence consists of a written agreement prepared by both Mrs. Jessen and Mrs. Zaragoza; Mrs. Jessen's testimony that they entered into an agreement for the sale; and a cashier's check for the $73,010 down payment delivered by the Jessens and deposited directly into the Zaragoza's bank account. After tendering the down payment, the Jessens took possession of the property and made improvements. We overrule Issue One.

### STATUTE OF FRAUDS DEFENSE AND BREACH OF CONTRACT

The Jessens initially raised a breach of contract claim in their original petition. The Zaragozas maintain that the Jessens may not assert such a claim because the parties' agreement was never reduced to writing or signed by the parties as is required under Texas law for a transfer of real property.

The Zaragozas rely on Mrs. Jessen's testimony and Document 2 to establish that the agreement was never reduced to writing or signed by the parties. The Zaragozas further assert that because Mrs. Jessen's testimony established that the contract could not be performed within one year, it was therefore subject to the statute of frauds defense. We find the Zaragozas' argument to be without merit

The Statute of Frauds requires a transfer of an interest in real property to be in writing. *See* TEX.PROP.CODE ANN. § 5.021 (West 2014). Additionally,

> [t]o be valid, a conveyance of real property must contain a sufficient description of the property to be conveyed. A property description is sufficient if the writing furnishes within itself, or by reference to some other existing writing, the means or data by which the particular land to be conveyed may be identified with reasonable certainty.

*AIC Mgmt. v. Crews*, 246 S.W.3d 640, 645 (Tex. 2008).

8

The statute of frauds is subject to a well-recognized exception under the doctrine of partial performance. *Carmack v. Beltway Development Co.*, 701 S.W.2d 37, 40 (Tex.App.--Dallas 1985, no writ). Under this exception, contracts that have been partly performed, but do not meet the requirements of the statute of frauds, may be enforced in equity if denial of enforcement would amount to a virtual fraud in the sense that the party acting in reliance on the contract has suffered a substantial detriment, for which he has no adequate remedy, and the other party, if permitted to plead the statute, would reap an unearned benefit. *Id.*; *Lovett v. Lovett*, 283 S.W.3d 391, 393-94 (Tex.App.--Waco 2008, pet. denied); *Chambers v. Pruitt*, 241 S.W.3d 679, 687 (Tex.App.--Dallas 2007, no pet.); *Harris v. Potts*, 545 S.W.2d 126, 126 (Tex. 1976); *Sharp v. Stacy*, 535 S.W.2d 345, 347 (Tex. 1976); *Davis v. Campbell*, 524 S.W.2d 790, 793 (Tex.Civ.App.--Dallas 1975, no writ). A purchaser of land may enforce an oral contract within this rule by showing: (1) payment of the consideration, (2) possession of the property, and (3) valuable improvements or other facts that would make the transaction a fraud on the purchaser if the contract remains unenforced. *Carmack*, 701 S.W.2d at 40; *Hooks v. Bridgewater*, 111 Tex. 122, 127, 229 S.W. 1114, 1116 (1921).

The evidence establishes that despite the fact that the parties did not have a formally signed contract, the Jessens nonetheless had a viable breach of contract claim against the Zaragozase. They made a $73,010 down payment on June 18, 2007. Upon tendering their $73,010 down payment to the Zaragozas, the Jessens took possession of the house. Pursuant to their agreement, the Jessens also paid off the Regions/EverHome mortgage balance of $33,990.00. Then, to make the property habitable for their daughter, they spent $9,717.41 on improvements and renovations to the house which included replacing the air conditioner, re-

9

tiling and re-carpeting portions of the house, and various electrical and plumbing repairs. We overrule Issue Two.

## FRAUD IN A REAL ESTATE TRANSACTION

The Zaragozas' next point of error alleges that there is no evidence to prove that they committed fraud in a real estate transaction. Section 27.01 of the Texas Business and Commercial Code provides a statutory cause of action for fraud in real estate transactions. *See* TEX.BUS.&COM.CODE ANN. § 27.01 (West 2015). Such fraud occurs if (1) a person makes a false representation of a past or existing material fact in a real estate transaction to another person for the purpose of inducing the making of a contract; and (2) the false representation is relied on by the person entering into the contract. *Id.* at § 27.01(a)(1)(A)(B). Further, the person who made the false representation is liable to the person defrauded for "actual damages" as well as "reasonable and necessary attorney's fees, expert witness fees, costs for copies of depositions, and costs of court." *Id.* at § 27.01(b), (e). If the false representation is made with actual awareness of its falsity, exemplary damages may also be recovered. *Id.* at § 27.01(c).

While there is rarely direct evidence of fraudulent intent, the fact finder is permitted to draw reasonable inferences from the direct and circumstantial evidence. *See Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774-75 (Tex. 2009)(While breach of the contract alone is not evidence that a party did not intend to perform, "breach combined with 'slight circumstantial evidence' of fraud" is some evidence of fraudulent intent, enough to support a verdict.). "[A] party's intent is determined at the time the party made the representation, [but] it may be inferred from the party's subsequent acts after the representation is made." *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986), *citing Chicago, T. & M.C. Ry. Co. v. Titterington*, 84 Tex. 218, 223, 19 S.W. 472, 474 (1892).

The evidence, along with the reasonable inferences we draw therefrom, permit us to conclude that the Zaragozas committed fraud in a real estate transaction. The evidence supporting our conclusion is as follows: (1) the sale of the Dorsey Home occurred; (2) Mrs. Jessen's testimony indicated that the Zaragozas agreed to deed the house to the Jessens once they finished paying off the Regions/EverHome mortgage; (3) the Jessens paid off the Regions/EverHome mortgage in September of 2009 and immediately asked the Zaragozas for the deed; (4) the Zaragozas did not tender the deed; (5) the Zaragozas similarly represented to the Jessens that they would use a portion of the Jessens' down payment to pay off a second lien on the house held by Beneficial but never did so; (6) instead, they used the money to purchase a car for their son and lived off the remainder and did not actually pay off the Beneficial mortgage until six years after the original transaction to sell the house occurred; (7) the Jessens personally paid the 2009 property taxes despite the fact that their mortgage payments to Regions/EverHome included sufficient escrow for the taxes and insurance; and (8) the Zaragozas kept these escrow funds rather than distributing them the Jessens.

We can infer from the Zaragozas' actions that they had no intent of actually deeding the property to the Jessens as they had initially represented. Such representations induced the Jessens to complete a series of transactions--tendering the down payment, paying off the Regions/EverHome mortgage, paying the 2009 taxes, taking possession of the property and making renovations--that they otherwise would have never agreed to do had they known they were not going to receive title. The Zaragozas' third issue is therefore overruled.

**MOTION FOR NEW TRIAL**

Finally, the Zaragozas contend that the trial court abused its discretion when it denied their motion for new trial. We review a trial court's ruling on a motion for new trial under an

11

abuse of discretion standard. *Director, State Employees Workers' Compensation Division v. Evans*, 889 S.W.2d 266, 268 (Tex. 1994). However, the Zaragozas' argument contains only conclusive statements with no support from any relevant case law or the record. Rule 38.1 of the Texas Rules of Appellate Procedure requires the Zaragozas to provide us with a discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue. *Ratsavong v. Menevilay*, 176 S.W.3d 661, 670 (Tex.App.--El Paso 2005, no pet.); *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 128 (Tex.App.--Houston [1st Dist.] 2002, pet. denied); *Franklin v. Enserch, Inc.*, 961 S.W.2d 704, 711 (Tex.App.--Amarillo 1998, no pet.). The Zaragozas' minimal briefing of this issue fails to properly preserve the error for our review. We overrule Issue Four and affirm the judgment of the trial court.

June 8, 2016

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

12