COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  |  |  |
|---|---|---|
| QUENTIN COLE ARMSTRONG, JR., | § | No. 08-16-00223-CV |
|  | § |  |
| Appellant, | | Appeal from |
|  | § | |
| v. | | 143rd District Court |
|  | § | |
| PAUL C. ARMSTRONG, | | of Reeves County, Texas |
|  | § | |
| Appellee. | | (TC # 14-10-20808-CVR) |
|  | § | |

## O P I N I O N

This appeal arises from a purported oral agreement between two brothers, Quentin Cole Armstrong, Jr., Appellant, and Paul C. Armstrong, Appellee, regarding the conveyance of an interest in real estate from Paul to Cole. After a dispute arose regarding an alleged breach of the oral agreement, Paul filed suit against Cole. In his petition, Paul claimed that Cole had failed to re-convey the real property interest as agreed, and had wrongfully received oil and gas revenues that were properly payable to Paul. His suit also sought an accounting and payment.

After a bench trial, the trial court ruled in Paul's favor and ordered Cole to convey Paul's interests by special warranty deed, and to provide true and correct copies of any mineral or surface lease affecting the property as well as an accounting under oath of all income received from the property. The trial court did not award damages but did issue findings of fact and conclusions of law. We reverse the trial court's judgment and render judgment for Cole.

# FACTUAL SUMMARY

### *Paul's Testimony*

Paul testified that after their father died, he and Cole each inherited a one-quarter interest, and their stepmother inherited a one-half interest, in the family land. In 2009 or 2010, Paul was in the midst of a divorce, and claimed to be in a poor emotional state. According to Paul, Cole was concerned about Paul's potential actions regarding his portion of the family land and leases, and asked him to convey his interest with the understanding that Cole would later convey that interest back to Paul. Paul was divorced on or about March 18, 2011.

Multiple deeds were introduced into evidence. The first from Paul as Grantor to Cole as Grantee was dated May 12, 2010. The deed was recorded on May 19. Paul identified his divorce attorney as the person who had prepared the deed, confirmed his own signature on the document, and recalled signing it. He admitted that the property conveyance had been his attorney's idea. The second general warranty deed showed a typed date of May 12, 2010, but the typed date had been scratched out and replaced by hand with "10 August 11." This document was dated and filed on August 10, 2011, and was recorded on August 26, 2011. Paul did not recall going to a notary and never knew that a deed dated August 10, 2011, had been filed. Nor did he know why the first deed was filed a second time. Paul also apparently signed a quitclaim deed that was the last of the several conveyances. Although he verified his signature and did not deny signing the instrument, Paul did not remember signing it. But he would have signed whatever his brother had given him and would only have signed the document at his brother's request. The typewritten date on the quitclaim deed is February 22, 2012, but is followed by the typed phrase, "effective, however, as of September 1, 2011." The quitclaim deed was filed February 27, 2012.

2

A general warranty deed purporting to re-convey the property from Cole to Paul bears a typewritten date of March 29, 2011. Above the notary's signature line is typed, "on this the ____ day of March, 2011 by Quentin Cole Armstrong." The document was notarized by Jessica Abila, who had been employed by Paul's divorce attorney.[1] The deed was filed for record on May 25, 2011, and was recorded on June 7, 2011. When shown this instrument at trial, Paul declared it was the first time he had seen the document, and did not know that his brother had ever signed the property back to him. Paul had no recollection of the document, did not know who had prepared the deed, had no knowledge regarding its authenticity, did not know the notary public, and did not know that the document had been filed.

In the spring of 2013, Paul asked Cole to re-convey the property interest but Cole's response was, "Not yet." Near the end of 2013, Paul asked again. This time, Cole declared that he would not re-convey the property to Paul. Paul trusted his brother, felt hurt and deceived by Cole's refusal, and believed his brother had breached that trust. Paul admitted that he had no written documentation other than the deeds.

Paul's testimony took a twist when he later testified that he had approached Cole about the proposed transfer of interest. When his divorce attorney had asked Paul to identify a trustworthy person to whom Paul could "convey [the property] so [he] could give it back," Paul answered, "My brother." Paul admitted that he "obviously" brought up the subject, and when asked whether the purpose of the conveyance was to "get it out of [his] name" in relation to his divorce, Paul testified, "Well, obviously it was."[2]

---

[1] The notary public was subsequently terminated from her employment.

[2] Paul then denied transferring his property interest in an attempt to cheat his wife during their divorce, and explained that he had not been "feeling right" and had transferred the property to his brother who he trusted "a hundred percent."

Cole was to re-convey the property whenever Paul asked him to do so, and no length of time was established.

The trial court judicially noticed the court's divorce file. His wife's inventory listed the land at issue as being Paul's separate property. In other words, she did not claim a community property interest therein.

### Cole's Testimony

Cole admitted that he had not paid any consideration as recited in the deeds, and acknowledged that the conversations occurred prior to May 12, 2010. He denied that that the conveyance was due to Paul's depression or pending divorce. He also denied he had promised to re-convey the property. He had not provided an accounting because he did not feel it was necessary. When asked why he would not re-convey the property, Cole testified:

A. He deeded it to me, and I told him I'm going to keep it.

Q. Pardon?

A. He deeded it to me, and I told him I'm going to keep it.

Q. Did you tell him in the spring of 2013 you weren't going to transfer it to him, 'not yet,' those exact words?

A. I don't recall saying 'not yet.' I told him it was my -- he deeded it to me and I'm going to keep it.

Q. There wasn't any real consideration for this transfer, was there?

A. No.

Q. Huh?

A. There was no money.

* * * * *

Q. Isn't it true that you were supposed to go back by his attorney's office and sign the deed back to him and a memorandum back to him?

4

A. No.

Q. So you just want something free.   You want his one-fourth interest free.

A. No.

Q. Why -- why are you saying that?

A. Well, I'm taking care of it.   That's all I can tell you.

Q. Pardon?

A. I'm taking care of it properly.   That's all I can tell you.

Q. And who are you taking care of it for?

A. The family.

Q. Whose family?

A. Our immediate family.

Q. Pardon?

A. The immediate family.

Q. Who specifically are you taking care of his one-fourth interest that he deeded it to you for?

A. I'm just taking care of his sons if they need any help.

Q. So you admit that you took this property basically as trustee for your brother's interest.

A. Yes.

Q. And now, as a trustee, when he wants it back, you refuse to give it back to him.

MR. SCOGIN: Object to the question that he's a trustee.

MR. WRIGHT: He admitted he was, Your Honor.

THE COURT: Well, that has legal connotations.   I'm not going to hold this witness as an expert.   But I'll overrule the objection, understanding that, you know, 'trustee' has a certain legal meaning that we may understand that he may not.

Although Cole admitted that earnings had resulted relative to "the leases," he was uncertain of the amount.

5

Cole delivered to his attorney a letter he had received from Paul's attorney requesting that he re-convey the property to Paul. Cole had not received any recorded deeds from the county clerk, and did not recall who had prepared them. Regarding the general warranty deed that purported to re-convey the property, Cole denied that the signature was his. He had learned about it when someone from the bank told him that Paul had come in with "this document."

On October 4, 2011, Cole filed in the clerk's office an affidavit of fact. He declared he had "acquired all of the one-fourth (1/4) interest of my brother, Paul C. Armstrong" in the property and had discovered "a general warranty deed dated March 29, 2011, recorded in Book 880, page 722, of the Official Public Records of Reeves County, Texas" showing that he had re-conveyed the property. He further declared, "I did not sign such document nor have I ever agreed to convey or re-convey this interest to anyone. As of this date, I still claim all of the interest conveyed to me under the General Warranty Deed, dated May 12, 2010, recorded in Book 843, page 182, of the Official Records of Reeves County, Texas."

*Trial Court's Ruling*

After considering closing arguments, the trial court took the matter under advisement, and requested production of authorities, proposed judgments, and findings of fact. Findings and conclusions were timely filed. The court entered judgment "in favor of [Paul,]" ordered Cole to re-convey the property and to provide an accounting of all income received as well as copies of mineral or surface leases affecting the property. The trial court did not award damages.

In eleven issues for review, Cole challenges all but one of the trial court's findings of fact, and all its conclusions of law, complaining that they are not supported by legally or factually sufficient.

6

## STANDARDS OF REVIEW

Unless the contrary is established as a matter of law or there is no evidence to support the finding, unchallenged findings of fact are binding on an appellate court. *Zaragoza v. Jessen*, 511 S.W.3d 816 (Tex.App.–El Paso 2016, no pet.). Challenged findings have the same force and dignity as a jury's verdict upon questions. *Zaragoza*, 511 S.W.3d at 816. Evidence supporting findings of fact are reviewable for legal and factual sufficiency under the same standards for evidence supporting a jury's answer. *Zaragoza*, 511 S.W.3d at 816.

We review *de novo* a trial court's conclusions of law. *Staley Family P'ship, Ltd. v. Stiles*, 483 S.W.3d 545, 548 (Tex. 2016), *citing City of Austin v. Whittington,* 384 S.W.3d 766, 788 (Tex. 2012). We will uphold a trial court's conclusions of law if the judgment can be sustained on any legal theory supported by the evidence. *See Zaragoza v. Jessen*, 511 S.W.3d 816 (Tex.App.--El Paso 2016, no pet.). Incorrect conclusions of law will not require reversal if the controlling findings of fact will support a correct legal theory. *Zaragoza*, 511 S.W.3d at 816.

## BREACH OF FIDUCIARY DUTY

We begin our analysis by examining Cole's fifth issue. In its findings of fact and conclusions of law, the trial court concluded a fiduciary relationship existed between the brothers and determined that Cole had breached his duty to re-convey the real property to Paul. Cole contends this is erroneous because Paul did not plead a breach-of-fiduciary-duty cause of action and the issue was not tried by consent. We agree.

An original pleading which sets forth a claim for relief must contain a short statement of the cause of action sufficient to give fair notice of the claim involved. TEX.R.CIV.P. 47(a). A judgment must conform to the pleadings and proof, and a party may not be granted relief in the

7

absence of pleadings to support it.   *Phillips v. Phillips*, 296 S.W.3d 656, 670 (Tex.App.--El Paso 2009, pet. denied)*, citing Stoner v. Thompson,* 578 S.W.2d 679, 682, 683-84 (Tex. 1979); *Marrs and Smith Partnership v. D.K. Boyd Oil and Gas Co., Inc.,* 223 S.W.3d 1, 18 (Tex.App.--El Paso 2005, pet. denied).

When issues not raised by the pleadings are tried by consent, they must be treated in all respects as if they had been raised in the pleadings.   TEX.R.CIV.P. 67; *Compass Bank v. Nacim*, 459 S.W.3d 95, 113 (Tex.App.--El Paso 2015, no pet.); *Phillips v. Phillips,* 296 S.W.3d 656, 670 (Tex.App.--El Paso 2009, pet. denied); *Gutierrez v. Gutierrez,* 86 S.W.3d 721, 729 (Tex.App.--El Paso 2002, no pet.).   This rule applies to those exceptional cases when it clearly appears from the record as a whole that the parties tried an unpled issue by consent.   *Nacim*, 459 S.W.3d at 113; *Gutierrez,* 86 S.W.3d at 729.   The trial-by-consent rule is not a general rule of practice but one that should be applied with care, and never in a doubtful situation.   *Nacim*, 459 S.W.3d at 113; *Marrs and Smith Partnership v. D.K. Boyd Oil and Gas Co., Inc.,* 223 S.W.3d 1, 18 (Tex.App.--El Paso 2005, pet. denied).   Trial by consent "applies only where it appears from the record that the issue was actually tried, although not pleaded."   *Marrs and Smith Partnership,* 223 S.W.3d at 18, *quoting Johnston v. McKinney American, Inc.,* 9 S.W.3d 271, 281 (Tex.App.--Houston [14th Dist.] 1999, pet. denied).   To determine whether the issue was tried by consent, we must examine the record not for evidence of the issue, but rather for evidence of *trial* of the issue.   *Nacim*, 459 S.W.3d at 113; *Marrs and Smith Partnership,* 223 S.W.3d at 18 (plaintiff not entitled to favorable judgment on un-pled cause of action unless tried by consent).

Paul failed to allege breach of fiduciary duty in either his original or supplemental petitions. We must next determine whether the issue was tried by consent. *See Nacim*, 459 S.W.3d at 113; *Marrs and Smith Partnership,* 223 S.W.3d at 18.

Formal and informal relationships may provide a basis on which fiduciary duties may be founded. *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.,* 823 S.W.2d 591, 593-94 (Tex. 1992), *superseded by statute on other grounds as stated in Subaru of Am., Inc. v. David McDavid Nissan, Inc.,* 84 S.W.3d 212, 225-26 (Tex. 2002)(op. on reh'g); *see also Lindley v. McKnight,* 349 S.W.3d 113, 124 (Tex.App.--Fort Worth 2011, no pet.)(Texas courts are reluctant to recognize fiduciary relationships). An informal fiduciary duty may arise from a moral, social, domestic, or purely personal relationship of trust and confidence, generally called a confidential relationship. *Crim Truck,* 823 S.W.2d at 594; *Lindley,* 349 S.W.3d at 124-25. A person is justified in placing confidence in the belief that another party will act in his best interest only where he is accustomed to being guided by the judgment or advice of the other party and there exists a long association in a business relationship as well as personal friendship. *Lindley,* 349 S.W.3d at 125; *see also Trostle v. Trostle*, 77 S.W.3d 908, 914 (Tex.App.--Amarillo 2002, no pet.)(where one person is accustomed to being guided by judgment or advice of another or is justified in believing one will act in best interest of another because of family relationship, confidential relationship may arise)*, citing Thigpen v. Locke,* 363 S.W.2d 247, 253 (Tex. 1962).

As we have previously observed:

Texas courts are reluctant to recognize informal fiduciary relationships. *See Schlumberger Tech. Corp. v. Swanson,* 959 S.W.2d 171, 177 (Tex. 1997); *Jones v. Thompson*, 338 S.W.3d 573, 583-584 (Tex.App.--El Paso 2010, pet. denied). Accordingly, not every relationship that involves a high degree of trust and confidence will give rise to a fiduciary duty. *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005). Because subjective trust is insufficient to create a fiduciary

9

relationship, the mere fact that one party trusts another does not transform a business arrangement into a fiduciary relationship. *Id.* at 331. The trust must be 'justifiable.' *Thigpen v. Locke,* 363 S.W.2d 247, 253 (Tex. 1963). When 'one person is accustomed to being guided by the judgment or advice of another or is justified in believing one will act in the best interest of another because of a family relationship, a confidential relationship may arise.' *Trostle v. Trostle,* 77 S.W.3d 908, 914 (Tex.App.--Amarillo 2002, no pet.). The existence of a confidential relationship depends on the 'actualities' of the particular relationship. *Thigpen*, 363 S.W.2d at 253. **The confidential relationship must exist prior to, and apart from, the transaction that forms the basis of the lawsuit**. *Meyer*, 167 S.W.3d at 331; *Hamblet v. Coveney*, 714 S.W.2d 126, 129 (Tex.App.--Houston [1st Dist.] 1986, writ ref'd n.r.e.). [Emphasis added].

*Garcia v. Vera*, 342 S.W.3d 721, 724 (Tex.App.--El Paso 2011, no pet.)(granting summary judgment on claims of fraud and breach of fiduciary duty); *see also Ins. Co. of N. Am. v. Morris,* 981 S.W.2d 667, 675 (Tex. 1998)(before imposing "such a relationship in a business transaction, there must be a fiduciary relationship before, and apart from, the agreement made the basis of the suit."); *see Crim Truck,* 823 S.W.2d at 594 ("that one businessman trusts another, and relies upon his promise to perform a contract, does not rise to a confidential relationship."); *Rice v. Metro. Life Ins. Co.,* 324 S.W.3d 660, 679 (Tex.App.--Fort Worth 2010, no pet.)(appellants failed to direct court to any other evidence concerning their relationship with insurance carrier apart from coverage at issue).

A fiduciary owes duties of "loyalty and good faith, integrity of the strictest kind, fair, honest dealing, and the duty not to conceal matters which might influence his actions to his principal's prejudice." *See Hartford Cas. Ins. Co. v. Walker Cnty. Agency, Inc.*, 808 S.W.2d 681, 687-88 (Tex.App.--Corpus Christi 1991, no writ)*, citing Douglas v. Aztec Petroleum Corp.*, 695 S.W.2d 312, 318 (Tex.App.--Tyler 1985, no writ). For example, when shown by evidence, extraneous facts and conduct such as excessive lender control, or influence in a borrower's business activities have formed the basis for finding the existence of a special relationship between a borrower and a

10

lender.  *Crim Truck,* 823 S.W.2d at 594; *Davis v. West,* 317 S.W.3d 301, 312 (Tex.App.--Houston [1st Dist.] 2009, no pet.).  However, "mere subjective trust," as a matter of law, is insufficient to transform arm's-length dealing into a fiduciary relationship.  *Schlumberger Tech. Corp. v. Swanson,* 959 S.W.2d 171, 177 (Tex. 1997); *see Meyer v. Cathey,* 167 S.W.3d 327, 329-31 (Tex. 2005)(declining to recognize a fiduciary relationship between plaintiff and defendant, friends who dined together for lunch every day over a four-year period).

Although a confidential relationship is ordinarily a question of fact for the fact-finder, it becomes a question of law when the issue is one of no-evidence.  *Crim Truck,* 823 S.W.2d at 594; *Lindley,* 349 S.W.3d at 125; *Thigpen v. Locke,* 363 S.W.2d 247, 253 (Tex. 1962). Although Texas courts have categorized certain relationships as "special," as would give rise to a tort duty of good faith and fair dealing, the Supreme Court of Texas has cautioned that the duty merely requires parties to "deal fairly" with one another and does not encompass the often more onerous burden that requires a party to place the interest of the other party before his own, which is often attributed to a fiduciary duty.  *Crim Truck,* 823 S.W.2d at 594.  In this case, the evidence wholly fails to establish that Cole acted as a trustee for Paul or had over a long period of time acted as an advisor with regard to the mineral leases or any other business.   There is no evidence that a moral, social, domestic, or purely personal relationship of trust and confidence existed between the brothers before and apart from Paul's conveyance.  *See Morris,* 981 S.W.2d at 675; *Crim Truck,* 823 S.W.2d at 594.  Paul offered no evidence to prove facts beyond the real estate transaction itself and he admitted, at least once, that the idea was his attorney's.  *Schlumberger Tech. Corp.*, 959 S.W.2d at 177 (Tex. 1997)(while fiduciary or confidential relationship may arise from circumstances of particular case, to impose such relationship in business transaction, relationship

11

must exist prior to, and apart from, agreement made basis of suit), *citing Transport Ins. Co. v. Faircloth,* 898 S.W.2d 269, 280 (Tex. 1995). Paul's subjective trust of Quentin, without more, is insufficient to transform the family relationship into an informal fiduciary relationship existing prior to, and apart from, the real estate agreement that forms the basis of the suit. *See Thigpen,* 363 S.W.2d at 253 (fact that parties to transaction trust one another will not, in and of itself, establish finding of confidential relationship). Consequently, the trial court erred in concluding that a fiduciary relationship existed and that Paul and Cole. For this reason, the trial court's judgment does not conform to the pleadings and proof. *Phillips*, 296 S.W.3d at 670*, citing Stoner,* 578 S.W.2d at 682, 683-84; *Marrs and Smith Partnership,* 223 S.W.3d at 18.

In his brief, Paul claimed the oral agreement should be enforced in equity under the partial performance exception to the statute of frauds for the purpose of avoiding a virtual fraud, and contended that specific performance in lieu of actual damages is appropriate when required to ensure a just result. Although not raised in the trial court nor in the briefing on appeal, Paul alleged during oral argument that an "oral" constructive trust existed between the brothers, and that Cole's alleged fiduciary agreement arose therefrom. Counsel then argued that the trial court judicially imposed such a trust. In response, we noted that the trial court did not find the existence of a constructive trust. On rebuttal, Cole's appellate counsel argued that the issue was not properly before us because it was not addressed in the judgment or the trial court's findings of fact and conclusions of law. We agree, and observe the following.

A constructive trust is a court-created equitable remedy designed to prevent unjust enrichment. *Kinsel v. Lindsey*, 526 S.W.3d 411, 425 (Tex. 2017); *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 87 (Tex. 2015); *Omohundro v. Matthews*, 161 Tex. 367, 373, 341 S.W.2d 401,

405 (1960).   To impose a constructive trust under Texas Law, the Supreme Court has delineated three elements that the proponent must establish:   (1) breach of a special trust or fiduciary relationship or actual or constructive fraud; (2) unjust enrichment of the wrongdoer; and (3) an identifiable res that can be traced back to the original property.   *KCM Fin. LLC* 457 S.W.3d at 87. Because we have concluded Paul failed to establish the first element, his argument is to no avail. We sustain Issue Five, and having done so, need not address the remaining points.   We reverse and render judgment for Quentin Cole Armstrong.

July 31, 2018

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.