

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00443-CV

**CONSOLIDATED REINFORCEMENT, L.P.**,
Appellant

v.

Ali **CHERAIF**,
Appellee

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2015CI16237
Honorable Barbara Hanson Nellermoe, Judge Presiding

Opinion by: Luz Elena D. Chapa, Justice

Sitting: Sandee Bryan Marion, Chief Justice
Luz Elena D. Chapa, Justice
Beth Watkins, Justice

Delivered and Filed: May 29, 2019

AFFIRMED

Consolidated Reinforcement, L.P. ("CRI") appeals the trial court's judgment awarding Ali Cheraif damages and attorney's fees for his fraudulent lien claim. In its first two issues, CRI contends the evidence is factually insufficient to support the trial court's findings that: (1) CRI made a fraudulent lien; and (2) CRI was not entitled to foreclose its lien. In its third issue, CRI contends the trial court abused its discretion in allowing Cheraif's attorney to testify regarding attorney's fees. We affirm the trial court's judgment.

## BACKGROUND

The trial court entered the judgment in the underlying cause after a bench trial. The following background is largely drawn from the trial court's findings of fact and conclusions of law.

Cheraif was the general contractor for the construction of a house pursuant to an investment contract dated January 21, 2014, between Cheraif and two investors. The investment contract contemplated Cheraif living in the house. Cheraif testified his wife selected the lot for the construction, and he and his wife intended to live in the house since the outset of the construction. Under the investment contract, Cheraif was to be paid $50,000 for his services as general contractor provided he was able to present "clear property title" to the house free of any liens within ten months after the date construction on the house began.

On May 17, 2014, Cheraif entered into a contract with Russell Bankston for the construction of the foundation for the house. CRI was included on the supplier list exhibit to the contract. The house's foundation was completed by June 12, 2014, and Bankston was paid in full.

On September 10, 2014, CRI mailed a notice of unpaid claim to Cheraif addressed to the house, which was still under construction. The notice stated CRI provided labor and materials in connection with Cheraif's project and referred to a residential construction project.[1]

On October 14, 2014, CRI mailed a notice of the filing of an Affidavit of Claim for Mechanic's Lien to Cheraif also addressed to the house, which was still under construction.[2] The

---

[1] For residential construction projects, section 53.252 of the Texas Property Code requires a claimant to give the owner and the original contractor written notice of an unpaid balance not later than the 15th day of the second month following each month in which the material was delivered in order for the claimant's subsequent lien against the property to be valid. TEX. PROP. CODE § 53.252(b). For other projects, the deadline for providing the notice is the 15th day of the third month following each month in which the material was delivered. *Id*. § 53.056(b).

[2] "A person claiming a lien arising from a residential construction project must file an affidavit with the county clerk of the county in which the property is located not later than the 15th day of the third calendar month after the day on which the indebtedness accrues." TEX. PROP. CODE ANN. § 53.052(b). For other projects, the lien affidavit must be

lien affidavit was filed on October 15, 2014, and stated unpaid work in the amount of $5,944.42 "was performed during the month of July, 2014." Among the invoices attached to the notice of unpaid claim was an invoice listing materials allegedly delivered on July 25, 2014.

In February of 2015, Cheraif discovered CFI's lien. Cheraif attempted to contact CRI's president but was referred to CRI's attorney. In conversations and emails with CRI's attorney, Cheraif explained the numerous problems with CRI's invoices.

Despite Cheraif's requests, CRI refused to mediate the dispute before suing Cheraif to foreclose its lien.[3] Cheraif filed a counterclaim asserting CRI filed a fraudulent lien. At the conclusion of the bench trial, the trial court entered judgment in favor of Cheraif, awarding him $50,000 in actual damages for the fee he was unable to collect under the investment contract because of the lien filed by CRI. The trial court also awarded Cheraif attorney's fees. CRI appeals.

SUFFICIENCY CHALLENGES

In its first two issues, CRI contends the evidence is factually insufficient to support the trial court's findings that: (1) CRI made a fraudulent lien; and (2) CRI was not entitled to foreclose its lien.

**A. Standard of Review**

Only one standard of review is used in reviewing factual sufficiency challenges, regardless of whether the complaining party had the burden of proof on the issue. *II Deerfield Ltd. P'ship v. Henry Bldg., Inc.*, 41 S.W.3d 259, 264 (Tex. App.—San Antonio 2001, pet. denied). In reviewing a factual sufficiency complaint, we must consider and weigh all of the evidence, and we only set aside a finding if the evidence supporting the finding is so weak, or the finding is so against the

---

filed not later than the 15th day of the fourth calendar month after the day on which the indebtedness accrues. *Id.* § 53.052(a).
[3] CRI also asserted claims against Bankston. CRI is not appealing the trial court's judgment in its favor relating to those claims.

great weight and preponderance of the evidence, that it is clearly wrong and unjust. *Id.* In a bench trial, the court, as fact finder, is the exclusive judge of the witnesses' credibility and the weight given their testimony, and is free to resolve any inconsistencies in the evidence. *Iliff v. Iliff*, 339 S.W.3d 74, 83 (Tex. 2011) (citing *Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 567 (Tex. 2000)). "We cannot merely substitute our opinion for that of the trier of fact and determine that we would reach a different conclusion." *II Deerfield Ltd. P'ship*, 41 S.W.3d at 264.

**B. Fraudulent Lien**

The elements of a claim for a fraudulent lien against real property are that the defendant: (1) made, presented, or used a document with knowledge that it was a fraudulent lien against real property, (2) intended the document be given legal effect, and (3) intended to cause financial injury. *Serafine v. Blunt*, 466 S.W.3d 352, 363 (Tex. App.—Austin 2015, no pet.) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 12.002(a); *Brewer v. Green Lizard Holdings, L.L.C. Series SR*, 406 S.W.3d 399, 403 (Tex. App.—Fort Worth 2013, no pet.)). Because CRI filed the lien pursuant to Chapter 53 of the Texas Property Code, Cheraif also had to show CRI acted with intent to defraud him. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 12.002(c).

"Intent is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to be given to their testimony." *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986). "While there is rarely direct evidence of fraudulent intent, the fact finder is permitted to draw reasonable inferences from the direct and circumstantial evidence." *Zaragoza v. Jessen*, 511 S.W.3d 816, 823–24 (Tex. App.–El Paso 2016, no pet.); *see also Spoljaric*, 708 S.W.2d at 435 (noting intent "invariably must be proven by circumstantial evidence"). Intent may also be inferred from a party's subsequent actions. *Spoljaric*, 708 S.W.2d at 434.

In its brief, CRI contends the evidence is factually insufficient to show: (1) its lien was fraudulent; (2) it filed the lien with knowledge that it was fraudulent; and (3) it filed the lien with intent to defraud and cause financial injury to Cheraif. Although CRI separately lists these elements, its argument on the elements is similar.[4] First CRI argues the lien affidavit may have contained mistakes but factual inaccuracies do not establish a knowing attempt to perpetuate a fraud. Next, CRI argues the trial court recognized the legitimacy of its invoices in awarding it a judgment against Bankston. Finally, CRI argues the intention to collect a debt is not the same as the intention to knowingly use a fraudulent lien.

The evidence at trial established the foundation was finished in June of 2014; however, one of CRI's invoices shows a ship date of July 25, 2014. The invoices also show the bulk of the materials purportedly supplied by CRI were delivered to the construction site; however, Cheraif testified he was present at the site every day and never received a delivery from CRI. Cheraif also testified Bankston brought the materials he used to the construction site. Cheraif further testified the materials referenced in the invoices were not the type of materials used in constructing the foundation. For example, one invoice refers to tensioning, but the foundation was not a tension slab, another invoice listed tie boxes which Cheraif testified were not the specific tie boxes used in the foundation; a third invoice referred to steel #5 and corner bar #5 which Cheraif also testified were not used in the foundation. Although CRI's brief cites to the testimony of its general manager and president regarding the delivery of the materials and the legitimacy of the lien affidavit, CRI had no records apart from the invoices showing the materials listed in the invoices were ordered

---

[4] We note CRI heavily relies on *Walker & Assocs. Surveying, Inc. v. Roberts*, 306 S.W.3d 839, 847–50 (Tex. App.—Texarkana 2010, no pet.), in support of his argument. Because that opinion addresses an appeal from a summary judgment which was reversed because the evidence raised a fact issue, CRI's reliance is misplaced because this appeal arises from a bench trial in which the trial court as the trier-of-fact resolved all fact issues.

for or delivered to the house Cheraif was constructing.[5] In fact, after hearing the evidence presented at trial, which was the same evidence Cheraif sent to CRI's attorney, CRI's president testified he realized the invoice with the July ship date looked like it was incorrect. With regard to the judgment against Bankston, the trial court could have believed CRI provided the materials to Bankston, but that Bankston did not use those materials for the house Cheraif was constructing.

In addition to the evidence establishing discrepancies with the invoices, the trial court also considered the evidence regarding the timing of CRI's notice of unpaid claim and lien affidavit. First, the trial court resolved the conflicting evidence and expressly found the project was a "residential construction project."[6] *See Iliff*, 339 S.W.3d at 83 (noting trial court, as fact finder in a bench trial, resolves inconsistencies in the evidence). Because the project was a residential construction project and the evidence established the foundation was completed in June of 2014, CRI was required to provide the notice of unpaid claim by August 15, 2014 and to record the lien affidavit by September 15, 2014. *See* TEX. PROP. CODE ANN. §§ 53.052(b), 53.252. The evidence is undisputed that CRI did not mail the notice until September 10, 2014 and did not file the lien affidavit until October 15, 2014. Given the statutory deadlines and the evidence that the foundation was completed in June of 2014, the trial court could have believed the invoice showing a ship date of July 25, 2014, was fraudulently created in an effort to extend the deadline for providing the

---

[5] CRI's president testified at trial as follows:

        Q. And, again, I want to confirm that it is — I want to confirm what Mr. Garcia [CRI's general manager] stated, that you really can't tell from these invoices exactly whether it was delivered or whether somebody picked it up?
        A. In San Antonio, apparently not.
        Q. And you have no records of who might have picked up this steel or for what job —
        A. That's correct.
        Q. — or where it was delivered. That's correct?
        A. Right.

[6] A residential construction project means "a project for the construction or repair of a new or existing residence." TEX. PROP. CODE ANN. § 53.001(10). As previously noted, the investment contract contemplated Cheraif living in the house, Cheraif's wife selected the lot, and he testified he and his wife intended to live in the house at the outset of the construction. Although Cheraif also referred to the house as a "spec house," the trial court resolved the inconsistencies in the evidence and found the project was a residential construction project.

notice of unpaid claim and for filing the lien affidavit. In fact, the trial court expressly found, "CRI intentionally and knowingly used the altered invoices in an attempt to send the above-referenced notices and file the Lien Affidavit within their respective statutorily prescribed deadlines. This was done in order to cause financial injury to Cheraif in an attempt to have him pay for material for which he would not be required to pay had those deadlines not been met, and furthermore to have him pay for material that was not provided on his project." In making these findings, the trial court could also have considered CRI's actions in mailing the notices to the address of a house that was under construction. An attorney[7] who worked in the office of CRI's attorney admitted the notice of unpaid claim letters sent to Cheraif were returned as undeliverable, but the attorney stated the returned mail was logged the same date the notice of lien was sent so they "crossed in the mail." The trial court expressly found the attorney "made no other diligent attempt to ascertain Cheraif's mailing address other than looking at the Bexar County Appraisal District's records."

Having considered and weighed all of the evidence, we hold the evidence is factually sufficient to support the trial court's finding that CRI made a fraudulent lien.

## C. Foreclosure of Lien

CRI also challenges the trial court's refusal to allow it to foreclose the lien. Because we have upheld the trial court's finding that the lien was fraudulent, the evidence supporting that finding is sufficient to uphold the trial court's refusal to allow CRI to foreclose. We note, however, the trial court's refusal to allow a foreclosure is further supported by evidence that the lien was not timely filed.[8] Lien rights are totally dependent on compliance with the statutes authorizing the lien. *Lyda Swinerton Bldrs., Inc. v. Cathay Bank*, 409 S.W.3d 221, 234 (Tex. App.—Houston [1st

---

[7] The attorney was licensed in California but not in Texas.

[8] We reject CRI's contention that the project was not a residential construction project for the reasons previously stated.

Dist.] 2013, pet. denied). Here, because CRI failed to comply with the applicable statutes, it did not have a valid lien to foreclose.[9]

CRI's first and second issues are overruled.

## ATTORNEY'S FEES

In its third issue, CRI contends the trial court erred in awarding Cheraif attorney's fees because he did not disclose his attorney as an expert witness in response to requests for disclosure. Cheraif responds CRI was not surprised by the testimony.

Parties have a duty to amend or supplement incomplete or incorrect responses to written discovery reasonably promptly after the party discovers the necessity. TEX. R. CIV. P. 193.5(a), (b). A party who fails to timely amend a discovery response may not offer the testimony of a witness who was not timely identified unless the court finds good cause exists for the failure to disclose or any failure to timely disclose will not unfairly surprise or unfairly prejudice the other parties. TEX. R. CIV. P. 193.6(a). A trial court's ruling on the admissibility of the testimony of an untimely identified witness will only be overturned on appeal if the trial court abused its discretion. *Fort Brown Villas III Condo. Ass'n, Inc. v. Gillenwater*, 285 S.W.3d 879, 881 (Tex. 2009).

The bench trial in the underlying cause was held on March 12, 2018. In his initial responses to requests for disclosure, Cheraif identified his prior attorney as a testifying expert. In response to CRI's objection to Cheraif's trial attorney testifying, Cheraif's trial attorney stated he was not aware CRI had served requests for disclosure because they were not contained in the file he received from the prior attorney. However, a copy of an email Cheraif's trial attorney sent CRI's attorney on February 12, 2018, was admitted into evidence. In the email, Cheraif's previous

---

[9] We note CRI's attorney stated during opening argument, "But if the Court finds that it is a residential construction contract, we lose. . . . If Your Honor finds that [Cheraif] intended to live there, we likely lose because of the time frame of the deadlines."

responses to interrogatories were supplemented by identifying his trial attorney as a witness to be called to testify at trial. In addition, additional attorney fee statements were attached to the email. Because the record establishes Cheraif's supplemental responses to interrogatories identified his trial attorney as a witness, the trial court did not abuse its discretion in determining CRI would not be unfairly surprised or prejudiced by allowing Cheraif's trial attorney to testify regarding attorney's fees. CRI's third issue is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

Luz Elena D. Chapa, Justice