

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-20-00311-CV

---

GINGER LIGHT AND JUSTIN LIGHT, APPELLANTS

V.

MIKE THOMA, APPELLEE

---

On Appeal from the 99th District Court
Lubbock County, Texas
Trial Court No. 2019-534,943, Honorable William C. Sowder, Presiding

---

June 14, 2021

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Appellants, Ginger and Justin Light, appeal the trial court's judgment awarding damages to appellee Mike Thoma in the parties' residential construction contract dispute. On appeal, the Lights challenge the sufficiency of the evidence to support the damages awarded to Thoma, the trial court's finding that the Lights materially breached first, and the trial court's adverse finding that Thoma did not fraudulently file a mechanic's and materialman's lien against the property. We affirm.

*Background*

In August 2018, the Lights and Thoma entered into a fixed price construction contract. Through it, Thoma agreed to build the couple's home for $364,354. The fixed price would be paid to Thoma through periodic draws when certain milestones or phases of the construction were substantially completed.

Thoma proposed a draw request form and utilized it in draw requests 1 through 5. Each were emailed to and approved by the Lights without complaint. Each was also paid by the Lights. They totaled $224,423.02.

Also included in the Light-Thoma contract was a procedure for change orders. They came into play when the Lights made revisions or additional requests that were not included in the original agreement.

By February 5, 2019, Thoma submitted Draw Request #6 and demand for payment on certain change orders. The Lights refused to pay either. They questioned the detail or purported lack thereof in the draw request and maintained that they had paid for certain items included in it. They communicated an offer to modify the contract, which offer Thoma refused. That, coupled with their failure to resolve their differences, resulted in Thoma forwarding them a default notice, calling off subcontractors, and ceasing work on the project. He also sued the Lights for breach of contract, contending that they failed to pay the draw request and change orders as required by their agreement. The Lights counterclaimed for breach of contract and fraudulently filing a mechanic's and materialman's lien. The Lights contend that Thoma failed to comply with the agreement's draw request procedure and failed to provide the quality and grade of workmanship and materials as agreed upon in the contract.

Thoma sought damages in the form of the amount he was "in the hole" at that point in the project. As he explained, the arrangement with the lender in this type of agreement was to pay a certain percentage of the fixed price upon the builder's substantial completion of certain phases or "milestones" of the project. Its effect was to have the contractor cover the construction expenses incurred in reaching that milestone. As Thoma explained, he was either even or in the hole on a project until it approached completion. Only as the project reached completion would he begin to realize a profit. When Draw #6 was submitted, he had expended $249,767 and been paid only $224,423.02 toward the fixed price. His lost profit also approximated $49,953.

Trial was to the bench. It was tasked with determining which of the two parties breached first and concluded that the Lights did. That breach occurred when they refused to pay the submitted draw request and change order. Damages of $24,750 were then awarded to Thoma. They generally encompassed the difference between his expenditures and the draws paid by the Lights. In turn, the claims asserted by the Lights were denied.

*Standards of Review*

The standard of review is well-settled and need not be reiterated. It is adequately explained in *Tex. Outfitters Ltd., LLC v. Nicholson*, 572 S.W.3d 647 (Tex. 2019), *City of Keller v. Wilson*, 168 S.W.3d 802 (Tex. 2005), and *Cain v. Bain*, 709 S.W.2d 175 (Tex. 1986) (per curiam).

*Sufficiency of Evidence Concerning Breach*

We first address whether Thoma materially breached the contract. In that regard, the Lights posit:

this Court should reverse the district court's decision and find that Thoma's refusal was a material breach. Because he never actually provided a compliant draw request, the Lights' obligation was never triggered. In the alternative, if Thoma's performance was not material, then the Lights' performance under the same provision should not be material either. Moreover, even if this Court were to disagree and find that Thoma's compliance was not material, this Court should still reverse because the undisputed evidence shows that Thoma breached the Contract—whether material or not. As a result, the Lights were entitled to seek their damages against Thoma and at the least, offset Thoma's damages.

We overrule the issue and begin by assessing the sufficiency of the evidence underlying the trial court's pertinent fact finding. The latter consisted of the court stating: "Thoma did not commit a material breach of the Contract; the defects of Thoma's performance of which the Lights complained did not seriously impair the purposes underlying the Contract." Those defects consisted of his failure to include information specified within paragraph 5(C) of the contract in his 6th draw request. The paragraph said, among other things, that "each draw shall reflect the construction costs and any compensation to the Builder for the time and effort expended in connection with this transaction" and "[t]he Draw Request shall include the name and address of each person who subcontracted directly with Builder and who Builder intends to pay from the requested funds." Such was omitted from the sixth request, just as it was from the prior five. Yet, the Lights paid the prior five in short order and without demanding compliance with 5(C).

Materiality is an issue "to be determined by the trier of facts." *Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc.*, 518 S.W.3d 432, 436 (Tex. 2017) (per curiam). In making the determination, the Texas Supreme Court outlined a number of nonexclusive considerations that are "significant in determining whether a failure to perform is material":

4

(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

(b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of the circumstances including any reasonable assurances; [and]

(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Id.* at 436–37 (Tex. 2017) (quoting *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 199 (Tex. 2004) (per curiam)). Regarding the first, it seems that the less the nonbreaching party is deprived of the expected benefit of the contract, the less material the breach. *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 693 (Tex. 1994). And, here, the importance of the expected benefit allegedly denied the Lights (i.e., being denied information about the subcontractor being paid by the draw) is best illustrated by the Lights response to its omission. They had been denied it five previous times, and their response to those denials consisted of paying the requests without complaint. As we have oft said, "actions speak louder than words." *In re State*, 572 S.W.3d 264, 276 (Tex. App.—Amarillo 2018, orig. proceeding) (Quinn, C.J., concurring) (op. on reh'g); *In re Marriage of McMahen*, No. 07-13-00172-CV, 2014 Tex. App. LEXIS 6154, at *8 (Tex. App.—Amarillo June 6, 2014, no pet.) (mem. op.). The response exhibited by the Lights to Thoma's prior defaults reveals an intent to assign minimal importance to the aspects of 5(C) in dispute. To that we also add the evidence about the type of construction contract they signed. It was one of "fixed price." Being of that ilk, industry norm made

payment of a draw dependent upon the stage of completion, as opposed to which subcontractor was getting paid what sum. So, according to Thoma, his expenditures were irrelevant in the draw request process and to the Lights' obligation to pay them. That, in turn, is some evidence indicating the omission did not violate standards of good faith and fair dealing in the home construction trade.

Next, no one cited us to evidence addressing whether the Lights could be adequately compensated for Thoma's failure to provide the omitted data. However, the Lights argue they could not since, without the information, "they would never know whether the correct goods were installed, unless they were to have another party examine the goods or somehow obtain the invoices from the third party." Yet, Thoma told the trial court that he normally provided his clients the information in question if they asked for it. So too did he attest to providing the Lights with the name and contact information of the subcontractors he used. This is some evidence that the Lights always had the means to obtain the information they belatedly deemed important and with which to safeguard against injury arising from the installation of defective or noncompliant materials. Yet, they apparently did not ask for it until after 1) paying five prior draw requests and 2) animosities developed on both sides resulting in mutual intransigence.

We remind the parties that the standard of review does not allow us to reweigh the evidence and select who to believe and who should win. Our task at bar is twofold. We first assess whether evidence supports the trial court's decision when viewing the record in a light favorable to that decision. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). Then, we assess whether the favorable evidence, if any, is so outweighed by all other evidence as to render the trial court's decision ***manifestly*** unjust or ***clearly***

6

wrong, not simply unjust or wrong.  *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998).  Rather than attempt to 1) explain why no evidence supports what the trial court decided or why supporting evidence actually has no value for purposes of a legal sufficiency analysis or 2) compare supporting and nonsupporting evidence for purposes of a factual sufficiency analysis, the Lights tend to foist upon us evidence favoring their position.  That tact seldom affords much assistance when addressing disputes implicating the sufficiency of the evidence.   Nonetheless, we found more than some evidence in the record upon which a fact-finder at bar could reasonably conclude that noncompliance by Thoma with paragraph 5(c) was an immaterial breach and that the sum of the remaining evidence does not render that conclusion manifestly unjust or clearly wrong.  So the finding was not bereft of either legally or factually sufficient evidentiary support.[1]

As for the contention that providing the information in 5(C) "triggered" the Lights' duty to pay, that harkens to the law of conditions precedent.  *See Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 108 (Tex. 2010) (defining "condition precedent" as an event that must occur before a right can accrue to enforce an obligation).  To render performance specifically conditional, terms such as "provided that," "on condition that," or some other phrase denoting conditionality must normally be utilized in

---

[1] It is also notable that the Lights failed to address a distinct material breach of theirs found by the court.  That breach involved their nonpayment of the change orders.  Paragraph 5(C) did not encompass the obligation to pay them.  So, irrespective of whether Thoma's failure to comply with 5(C) constituted a material breach relieving the Lights from paying the draws, it stands that they materially breached the agreement by refusing to pay the change orders.  More importantly, demand for their payment came days before Thoma submitted the draw requests.  Thus, that breach may well have preceded any alleged obligation that Thoma had to comply with 5(C) and actually relieved him from complying with 5(C).  *See PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630, 633 (Tex. 2008) (stating that a material breach by one party relieves the other from having to perform contractual obligations).  And, if he had no obligation to comply with 5(C), then the sum and substance of the Lights' current argument would be irrelevant.

7

the agreement. *Daniels v. Cortez*, No. 01-18-00086-CV, 2019 Tex. App. LEXIS 5914, at *7 (Tex. App.—Houston [1st Dist.] July 11, 2019, no pet.) (mem. op.). If such language is not used, then generally the clause will be construed as a covenant to prevent a forfeiture. *Criswell v. European Crossroads Shopping Center, Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990) (op. on reh'g). This is so because the absence of conditional language is probative of the parties' intention to create a promise as opposed to a condition. *Id.* Conditional language is missing from the obligation of Thoma to provide the data mentioned in 5(C). Nor from the context of the entire contract can we garner an intention to make the provision of the data a condition precedent to the Lights' payment of a draw.[2] Thus, we reject the proposition that their duty to pay the sixth draw request was never "triggered."

Regarding the Lights' allegation about breached contract and a right to pursue damages even if the breach were immaterial, the Lights did not assert below such a cause of action relating to noncompliance with 5(C). According to their live pleading, their breached contract allegation encompassed overpayment to and the cessation of work by Thoma. Nothing was said about the contractor breaching the contract through noncompliance with 5(C). More importantly, the Lights have cited us to no authority holding that if a judgment is reversed, a reviewing court should afford a litigant opportunity to damages for a claim they neglected to allege.

*Sufficiency of Evidence on Damages*

The Lights next challenge the sufficiency of the evidence to support the trial court's $24,750 award of damages to Thoma. We overrule the issue.

---

[2] Indeed, the Lights having paid the earlier draws without demanding the data hardly suggests they ever intended the part of 5(C) in dispute to be a condition to their performance.

We begin with a housekeeping issue. Trial began with the court reading into the record the stipulation regarding several items of evidence from both parties. It reflected that the parties agreed to the admission of many exhibits. Absent from the trial court's recitation, though, is mention of Plaintiff's Exhibit 16. The latter consisted of various receipts and invoices memorializing Thoma's expenditures on the project. The record further indicates that the exhibit was not formally offered and accepted into evidence. Nevertheless, both parties referred to it without objection during the trial and treated it as if it were admitted.

This is not the first time that litigants have treated exhibits as admitted when they formally were not. In those circumstances, reviewing courts followed the parties' lead and deemed the exhibits part of the evidentiary record. *See e.g., In re J.R.*, No. 07-18-00240-CV, 2018 Tex. App. LEXIS 7862, at *6–7 (Tex. App.—Amarillo Sept. 26, 2018, pet. denied) (mem. op.) (stating that though not formally admitted, the exhibit was, "for all practical purposes, admitted[,]" given the absence of an objection at trial) (citing, *inter alia*, *Requeno v. State*, No. 10-11-00046-CR, 2011 Tex. App. LEXIS 5609, at *2–3 (Tex. App.—Waco July 20, 2011, no pet.) (mem. op., not designated for publication)); *see also Tex. Dep't of Pub. Safety v. Monroe*, 983 S.W.2d 52, 56 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (treating evidence as admitted because the trial court and the parties so treated it). Thus, we follow that lead and treat Exhibit 16 as part of the evidentiary record here.

Exhibit 16 having been part of the evidentiary record before the trial court, it was incumbent to include it in the appellate record. That is, when an appellant complains of the legal or factual sufficiency of the evidence, the appellant's burden to show that the

9

judgment is erroneous cannot be discharged in the absence of a complete or an agreed statement of facts. *Schafer v. Conner*, 813 S.W.2d 154, 155 (Tex. 1991) (per curiam). Therefore, a court reviewing the sufficiency of the evidence may overrule an appellant's complaint concerning, as here, the sufficiency of the evidence supporting damages because, in the absence of a complete appellate record, it is presumed that the omitted evidence supports the trial court's judgment. *See id.*; *see also Sandoval v. Comm'n for Lawyer Discipline*, 25 S.W.3d 720, 722 (Tex. App.—Houston [14th Dist.] 2000) ("Because [appellant] did not file a complete record on appeal or comply with the partial reporter's record provisions of Appellate Rule 34.6, we continue to presume the omitted portions of the reporter's record support the judgment."). We employ this presumption here and presume that omitted Exhibit 16 supports the trial court's judgment in favor of Thoma.

And the evidence that is contained in the appellate record also supports the trial court's judgment. Plaintiff's Exhibit 15 consists of a document entitled "Job Estimates vs. Actuals for Light Home." It depicts actual costs for goods and services expended. Items and services which had not yet been purchased or performed were shown to be "0.00." Total expenditures shown were $249,767.00. *See Supertrack Arlington v. Proton, PRC, Ltd.,* No. 07-19-00223-CV, 2021 Tex. App. LEXIS 1638, at *5–10 (Tex. App.—Amarillo Mar. 4, 2021, no pet. h.) (mem. op.) (per curiam) (wherein purchases and payments within a general ledger were found to be probative evidence illustrating damages). Deducting from that amount the draws actually paid by the Lights (i.e., $224,423.02) resulted in a difference of $25,343.98. Also within Exhibit 15 is a company "Custom Transaction Detail Report." It illustrated that Thoma's expenses relating to the project exceeded payments

from the Lights by about $24,157 as of February 16, 2019. This comported with Thoma's own testimony.

The fact-finder generally has discretion to award damages within the range of evidence presented at trial. *Keywordvalet, LLC v. Parts Base, Inc.*, No. 01-20-00078-CV, 2021 Tex. App. LEXIS 2187, at *12 (Tex. App.—Houston [1st Dist.] Mar. 23, 2021, no pet.) (mem. op.) (citing *Gulf States Utils., Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002)). The foregoing evidence illustrates that Thoma expended between $24,157 and $25,343.98 more than what he had been paid on the project. The trial court's award of $24,750 falls within that range. Consequently, the award had both legally and factually sufficient evidentiary support.

*Sufficiency of Evidence on Adverse Finding Concerning Fraudulent Intent*

The final issue we address is Lights' contention that the trial court erred in not finding that Thoma fraudulently filed a mechanic's and materialman's lien. Purportedly, he knew he earlier had transferred the lien to AgTexas. We overrule the issue.

Though the trial court invalidated the lien, it found Thoma's lien had been filed without the intent to defraud. The latter is an element of the claim at issue. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 12.002(c) (West 2017) (stating that when a lien is filed pursuant to Chapter 53 of the Texas Property Code involving liens of contractors and materialmen, a complaint seeking damages must also prove the encumbrance was filed with the intent to defraud). "Intent is a fact question uniquely within the realm of the trier of fact . . . ." *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986). That trier of fact is free to draw reasonable inferences from both direct and circumstantial evidence. *Consol. Reinforcement, L.P. v. Cheraif*, No. 04-18-00443-CV, 2019 Tex. App.

LEXIS 4371, at *4–5 (Tex. App.—San Antonio May 29, 2019, no pet.) (mem. op.) (citing

*Zaragoza v. Jessen*, 511 S.W.3d 816, 823–24 (Tex. App.—El Paso 2016, no pet.)).  So

too may it draw reasonable references about intent from a party's actions.  *Aquaplex, Inc.*

*v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 775 (Tex. 2009) (per curiam).

As part of the transaction between Thoma and the Lights, the parties executed a

document stating:

> Owner [The Lights] grant to Builder [Thoma] a mechanic's lien to secure performance of the obligations of Owner.  If Owner is obtaining an interim construction loan, Builder ***shall assign to the interim construction lender a portion of Builder's mechanic's lien equal to the amount of the interim construction loan advanced*** to or for the benefit of the Owner and paid to Builder, and to subordinate any remaining amount of Builder's Lien to the interim construction loan.  In the event that the improvements to be erected fail for any reason to be completed, or fail to be completed according to this Contract, . . . then ***Builder and the holder of the indebtedness under the builder's and mechanic's lien shall have a valid and subsisting lien for the Total Contract Price less such amount as would be reasonably necessary to complete the improvements*** according to the Construction Documents.  In the event of any conflicts between this Contract and the builder's and mechanic's lien contract, the terms of this Contract shall control.

(Emphasis added).  Needless to say, the provision's meaning is somewhat uncertain.[3]

While we do not say that the legal effect of the contract was to allow Thoma to keep a lien

after assigning one to a lender, we cannot ignore that one could so read it.  Indeed, the

first portion of the agreement (as reflected in the paragraph) obligated the contractor to

assign a mechanic's lien to the lender.  Yet, the rights assigned were envisioned as pro

rata.  That is, they equaled only the amount of the construction loan advanced.  So,

between Thoma and the Lights, the contractor retained some liens, according to the

---

[3] When the Lights' trial counsel delved into how Thoma could retain lien rights via the contract when he had already assigned them to a lender, Thoma answered that he did not know because he was not a lawyer.

12

provision.  The paragraph also indicates that the Lights agreed to give both the contractor and lender a lien equal to the "Total Contract Price," less certain sums.  So, under either provision, one could argue that Thoma retained some if not all his rights to a mechanic's lien, at least between him and the Lights.

Again, we are not construing the paragraph for purposes of determining its legal meaning.  Instead, we assess what the effect of its words may have had on the element of intent to defraud.  To the extent the paragraph can be read, correctly or not, as permitting Thoma to retain lien rights despite an earlier assignment of them to a lender, that is evidence which the fact-finder reasonably could construe as indicating the builder lacked the intent to defraud when actually filing the lien.  And, again, the paragraph can be so read.  Consequently, we cannot say that the trial court's finding of no intent to defraud lacked legally or factually sufficient evidentiary support or was otherwise wrong.

Having overruled the Lights' issues, we affirm the trial court's judgment in favor of Thoma.


Brian Quinn
Chief Justice


13