

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| CHARLES N. TAYLOR, JR., | § | No. 08-14-00066-CV |
| Appellant, | § | Appeal from |
| v. | § | County Court at Law No. 3 |
| DEE MARGO, IN HIS INDIVIDUAL | § | of El Paso County, Texas |
| AND OFFICIAL CAPACITIES, AND MICHAEL WILLIAMS, IN HIS | § | (TC # 2013-DCV-2873) |
| INDIVIDUAL AND OFFICIAL CAPACITIES, | § | |
| | § | |
| Appellees. | | |

## **O P I N I O N**

Charles Taylor, appearing *pro se*, appeals from an order dismissing his lawsuit against Michael Williams, Commissioner of the Texas Education Agency, and Donald "Dee" Margo, the President of the Board of Managers, who was appointed by Williams to manage the El Paso Independent School District. For the reasons that follow, we affirm.

### **FACTUAL SUMMARY**

This litigation stems from a corruption and cheating scandal involving former El Paso Independent School District (EPISD) Superintendent Dr. Lorenzo Garcia and six unindicted co-conspirators, wrongdoing committed by EPISD employees, and mismanagement by the EPISD

Board of Trustees.[1]  On June 13, 2012, Garcia pled guilty in federal court to conspiracy to commit mail and wire fraud.  The guilty plea related to charges that he defrauded the Texas Education Agency (TEA) and the United States Department of Education by providing fraudulent data regarding the grade classification and demographic makeup of students, which artificially inflated the District's state and federal accountability scores to secure federal funding under the No Child Left Behind program.[2] Garcia created false demographics by discouraging students from enrolling, improperly causing students to withdraw from school, denying foreign students properly earned credits, and improperly reclassifying tenth grade students to the ninth or eleventh grade by changing passing grades to failing and failing grades to passing and by deleting earned student credits.[3] It was later determined that the Board of Trustees did not take immediate, decisive action in response to Garcia's guilty plea, nor did the Board immediately and decisively modify the District policies that enabled the superintendent to engage in fraud.

On August 13, 2012, in response to the corruption at EPISD, the TEA lowered the District's 2011-2012 accreditation status from "accredited" to "accredited-probation." On December 6, 2012, Commissioner Williams sent a letter to the school board president and interim superintendent announcing his plan to appoint a Board of Managers to exercise the powers and duties of the District's Board of Trustees under the authority of TEX.EDUC.CODE ANN. §39.102(a)(9) and pursuant to the requirements of TEX.ADMIN.CODE ANN. §§97.1073(e) and 97.1059(b). The letter stated that TEA had requested preclearance from the United States

---

[1] The plot was uncovered and vigorously pursued by former State Senator Eliot Shapleigh.

[2] No Child Left Behind (NCLB) was an extension of the Elementary and Secondary Education Act (ESEA) legislation passed by the United States Congress in 1965. NCLB, enacted in 2002 as an extension of ESEA, provided for funding for K-12 education.

[3] According to an October 5, 2012 article in the El Paso Times, Dr. García also was ordered to pay $180,000 in restitution to the school district and to pay a $56,500 fine to the government, which federal authorities determined was the total amount he had received in bonuses for good student performance on state exams.

Department of Justice, and that upon receipt of preclearance, the powers of the current Board of Trustees would be suspended, and the Board of Managers would exercise all of the powers and duties assigned to the District's Board of Trustees by law, rule, or regulation, pursuant to TEX.EDUC.CODE ANN. §§39.112(a), (b). In the interim period before the installation of the Board of Managers, a conservator was appointed to oversee operations of the district.

Following the issuance of Commissioner Williams' December 6th letter announcing the appointment of a Board of Managers, EPISD requested a record review of the proposed action. A record review is a meeting under TEX.ADMIN.CODE ANN. §1037(e) wherein TEA representatives meet with the superintendent and/or representatives of the District to receive oral and written information relative to a proposed order by TEA. After the record review in this case, the designee of the Commissioner of Education found that Commissioner Williams had legal authority on several grounds to appoint a Board of Managers. The designee also noted that the Board of Trustees failed to "identify, prevent, and timely and appropriately respond to the intentional, unethical, and illegal acts of its superintendent and staff." The designee emphasized that "the problems in El Paso ISD stemming from fraudulent actions of the former superintendent and his co-conspirators were extremely serious and were the worst that the agency's governance senior director had ever seen in his career." The designee thus held that EPISD's record review challenging of the appointment of the Board of Managers should be denied.

The designee further ordered that the Board of Managers assume the title, duties, and authority of a Board of Managers with regard to TEA's oversight of EPISD. Pursuant to TEX.EDUC.CODE ANN. §39.112(e), the designee ordered that not later than the second anniversary of the date the Board of Managers is appointed, at the direction of the

3

Commissioner, the Board of Managers shall order an election of members of the District Board of Trustees, and that thereafter the Board of Trustees would resume all powers and duties assigned to them by law.

On April 26, 2013, the Department of Justice provided preclearance for the appointment of a Board of Managers. On May 7, 2013, the members of the Board of Managers were sworn into office. On May 11, 2013, an election was held for four EPISD trustee seats. This election was ordered by the Board of Trustees prior to the Board of Managers being sworn into office. Following a run-off election on June 15, 2013, Charles Taylor was elected to the Board of Trustees for District #5. He filed this lawsuit on July 22, 2013 against Commissioner Williams and the President of the Board of Managers, Donald "Dee" Margo.

In his original petition, Taylor sought injunctive relief alleging:

6.1 The underlying suit arises out of actions by Defendants for failure to complete Post Election Procedures as outlined in the Texas Election Code, violations of statutory law under the Texas Education Code and the Texas Constitution, and violation of Due Process and Deprivation of Liberty as guaranteed by the Fourteenth Amendment of the United States Constitution.

6.2 On May 7, 2013, Mr. Williams officially installed a Board of Managers headed by Mr. Margo suspending the elected board of trustees in an effort to stabilize the operations of EPISD.

6.3 Pursuant to Sec. 39.112(e) the Board of Managers must order an election of the Board of Trustees within two (2) years of their appointment.

6.4 An election was held May 11, 2013 where new members for the Board of Trustees were elected satisfying the mandatory statutory requirements of Sec. 39.112(e) well within the two (2) year requirement.

6.5 Plaintiff was successfully elected to the EPISD Board of Trustees, District #5 following a runoff election June 15, 2013.

6.6 On June 25, 2013 EPISD pursuant to Sec. 67.001 through 67.017 Tex. Elec. Code did canvass the vote declaring the results of the runoff election.

6.7 Following the canvass Defendants have failed to complete the certificate of election as mandated by Sec. 67.016 Tex. Elec. Code.

4

6.8 Defendants continue to deprive Plaintiff the execution of the Officer's Statement as mandated by Art XVI (1)(b) of the Texas Constitution.

6.9 As a result of depriving Plaintiff of completing the Officer's Statement and without the certificate of election Plaintiff is ultimately deprived of taking the oath of office thus barring Plaintiff from the duties of the office pursuant to Sec.11.061(a) Tex. Educ. Code.

\* \* \* \* \* \*

10.1 WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants Mr. Margo and Mr. Williams, individually and officially, be cited according to law to appear and answer herein; that before notice and hearing an *Ex Parte* TEMPORARY RESTRAINING ORDER be issued; that after due notice and hearing a TEMPORARY INJUNCTION be issued; that this matter be set for trial; and upon final hearing a PERMANENT INJUNCTION be issued restraining and enjoining Defendants, their successors, assigns, officers, agents, servants, employees, and representatives from making representations, doing the acts, and engaging in the unlawful practices set out in the preceding paragraphs within El Paso County, Texas as follows:

A. Depriving Plaintiff of his duly elected office as district# 5 Board of Trustee in EPISD.
    1. Deprivation of certificate of election.
    2. Deprivation of officer's statement.
    3. Deprivation of Oath of office.
    4. Deprivation of right to office.

Margo sent Taylor the Certificate of Election on December 3, 2013, which Taylor complains was 160 days late. Taylor was instructed where to obtain the requisite Statement of Officer and the Oath of Office. Taylor signed the former on December 5, 2013 and the latter on December 6, 2013. Although it is not entirely clear from the pleadings, his reference to the "deprivation of right to office" has been construed by Appellees as failing to allow him to officially take office because the Board of Managers was still in control. In a nutshell, Taylor claims that the 2013 election ended the Board's control and that Taylor was entitled to assume office as a Board Trustee after the appropriate canvassing of the election. Appellees respond that the Board of Managers remained in control of the District until the May 2015 election. The presiding judge of County Court at Law No. Three, the Honorable Javier Alvarez, denied the

5

request for temporary restraining order on July 30, 2013. Taylor filed an amended petition and the temporary restraining was denied again by Judge Alvarez on August 21, 2013.

Both Williams and Margo filed pleas to the jurisdiction. On December 18, 2013, the trial court, with Judge Susan Larsen presiding, entered an order granting Margo's and Williams' pleas to the jurisdiction and dismissed the case with prejudice. The portion of the order dismissing the case with prejudice was in error, because Margo still maintained a counterclaim against Taylor for attorney's fees. Margo filed a motion to modify the judgment and on January 17, 2014, Judge Larsen entered a modified order granting Williams' and Margo's pleas to the jurisdiction. Taylor filed a request and a reminder request for findings of fact and conclusions of law. He does not assign error to the trial court's failure to issue findings.[4] Moreover, findings of fact are not authorized when a case is dismissed for want of subject matter jurisdiction without an evidentiary hearing. *Zimmerman v. Robinson*, 862 S.W.2d 162 (Tex.App.-Amarillo 1993, no writ). No evidentiary hearing was held below, but the record contains the Commissioner's December 6, 2012, letter Appointing a Board of Managers to El Paso Independent School District (35 pages); the Decision of the Designee of the Commissioner of Education on Record Review of the Appointment of a Board of Managers and an Information Review of the Appointment of a Conservator, TEA Docket No. 028-RS-12-2012 (27 pages); and the United States Department of Justice letter regarding Temporary Transfer of Powers (1 page), all tendered by Isabel Lozoria Camarillo, a custodian of official records of the Texas Education Agency.

---

[4] The trial court's failure to make findings upon request must be attacked by point of error on appeal or the complaint is waived. *In Interest of Hidalgo*, 938 S.W.2d 492 (Tex.App.--Texarkana 1996, no writ); *Perry v. Brooks*, 808 S.W.2d 227, 229-30 (Tex.App.--Houston [14th Dist.] 1991, no writ); *Belcher v. Belcher,* 808 S.W.2d 202, 206 (Tex.App.--El Paso 1991, no writ).

6

**ASSERTED GROUNDS FOR PLEAS TO THE JURISDICTION**

Williams' plea to the jurisdiction was predicated on (1) lack of standing; (2) injunctive relief could not be obtained against Williams in his individual capacity; and (3) claims against Williams in his official capacity are barred by sovereign immunity. Margo's plea alleged (1) lack of standing; (2) failure to exhaust administrative remedies; (3) official immunity; (4) mootness; (5) quo warranto is the exclusive remedy; and (6) Taylor has no liberty or property interest in his board member position.

**ISSUES PRESENTED**

We will itemize the issues for review as precisely stated in Taylor's Original Brief and Reply Brief which considerably simplified his claims.

Election Code: Did the trial court hold that, contrary to the election code, Section 1.002 (b) (that government defendants could ignore language that) "This code supersedes a conflicting statute outside this code unless the code the outside statute expressly provides otherwise?" (parenthesis added)

Election Code: Did the trial court hold that, contrary to the *Tex. Elec.Code,* SUB CHAP E. Sec. 273.081 (that) " a person who is being harmed… by a violation of this code is (not) entitled to appropriate injunctive relief to prevent the violation (by government defendants) from continuing…?" (parenthesis added). *See Cahill v Bertuzzi, No. 13-09-00183-CV, 2010 Tex. App. LEXIS 3951, at \*17 - \*18 (Tex. App.-Corpus Christi May 27, 2010, pet. filed)(mem. op) (stating that Section 273.081 of the election code gives the trial jurisdiction to enjoin violations of the election code…)*

Election Code/Injunction: Did the trial court assess the asserted right of the Appellant to seek injunctive relief and an adequate remedy at law for equitable relief ?

Causal Relationship: Did the trial court hold that Appellees assertion of 'lack of causal relationship' between defendants is acceptable? Such being contrary to *Sec. 219(1)* of the Restatement which sets out the central principle of agency law: "A master is subject to liability for the torts of his servants committed while acting in the scope of their employment." *See Burlington Industries Inc. v. Ellerth,* 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998).

Immunity: Did the trial court recognize "[T]hat the present trend of all states, including Texas, is to limit and do away with governmental immunity." *Tompkins v. City of El Paso,* 449 F. 2d 842 (5th Cir. 1971)?

Immunity: Did the trial court consider the defendants have violated state statutory and constitutional laws and U.S. constitutional guarantees; therefore, they have waived their rights to immunities claimed? *See Heinrich,* 284 S.W. 3d at 372 "Suits to require state official to comply with statutory or constitutional provisions are not prohibited by sovereign immunity."

Plea to the Jurisdiction: Did the trial court consider…"A plaintiff generally deserves a reasonable opportunity to amend defective pleadings unless the pleadings demonstrate incurable defects or negate the existence of jurisdiction?" *Texas A&M Univ. Sys. v. Koseoglu,* 233 S.W.3d 835, 839 (Tex. 2007).

Plea to the Jurisdiction: Did the trial court…" construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent?" *Texas Dep't of Parks & Wildlife v. Miranda,* 133 S.W. 3d 217, 226 (Tex. 2004).

Did the court find evidence that created a fact issue on the jurisdiction question and not seek the 'fact finder' to resolve the dispute? *Miranda,* 133 S.W 3d 227-28 (Tex. 2004).

Plea to the Jurisdiction: Did the trial court require Appellees to meet summary judgment standard of proof for its assertion that the trial court lacks jurisdiction? *Miranda,* 133 S.W. 3d at 228; *see Tex. R. Civ.P.* 166a (c).

Standing: Did the trial court evaluate each of the 3-elements that constitute 'Standing'? 1) Injury – Appellant still suffering under restrictive measures; 2) Causation – Injury was directly caused by defendants; and, 3) Redressability – A favorable court decision is likely to redress the situation.

Administrative Remedies: Did the trial court consider that…"Texas courts do not demand the exhaustion of administrative remedies but instead extend jurisdiction to remedy the irreparable injuries that agencies cannot redress ?" (*) *McQueen v. Bullock,* 907 F. 2d 1544 (5th Cir, 1990). Also, "… One is not compelled to exhaust an administrative remedy that is inadequate or… insufficient…" *Southwestern Bell Telephone Co. v. Public Utility Comm. of Texas,* 618 S.W. 2d 130, 134 (Tex.Civ.App. 1981).

Counterclaim: Did the trial court fully evaluate the validity of Appellees motion to modify an order and its subsequent grant for Appellees to file a counterclaim? Did the trial recognize the granting would be void due to its contradiction of law? The trial court granted plea to the jurisdiction and at the same time recognized Appellees counterclaim… "A government entity waives sovereign immunity by

asserting its own affirmative claims for monetary relief." See *Reata Constr. Co. v.City of Dallas,* 197 S.W. 3d 371, 376 – 77 (Tex. 2006).

Counterclaim: Did the trial court recognize the failure of Appellees timely filing of the counterclaim? Due October 9, 2013; filed December 11, 2013 – some 70-days late; therefore, untimely. *Tex. Rules of Civ. Proc.,* Rule 99.

Mootness: Did the trial court consider that moot refers to an issue that remains unsettled, open to argument or debatable? Did the trial court decide that the case was resolved by a court of law? Did the trial court use the Mootness Doctrine when evaluating the mootness claim? – *see U.S. Const.,* Art. III.

In his Reply Brief, Taylor restated and "simplified" the issues:

1. Does any Section of the Education Code supersede the Election Code?

2. Did the trial court analyze and apply the law correctly concerning Sec. 273.081 of the Election Code entitling injunctive relief to a person being harmed by violations of the Election Code?

3. Did the trial court analyze and apply the law correctly concerning standing?

4. Is immunity afforded in causes seeking equitable relief?

5. Did the trial court find the summary judgment standard when granting the plea to the jurisdiction?

6. Did the trial court analyze and apply the law correctly concerning the exhaustion of administrative remedies?

7. Did the trial court analyze and apply the law correctly concerning the issue of mootness?

8. Did Appellee Margo seek affirmative relief and thereby waive sovereign immunity?

9. Was the trial court's judgment based on fraud?

We are mindful that Taylor is a *pro se* litigant and we have construed his brief liberally as required by Rule 38.9. *Ramirez v. First Liberty Ins. Corp.,* 458 S.W.3d 568, 572 (Tex.App.-El Paso 2014, no pet.); TEX.R.APP.P. 38.9. When a party appears *pro se,* he is held to the same standards as a licensed attorney and must comply with all applicable laws and rules of procedure.

9

*Robb v. Horizon Communities Improvement Ass'n, Inc.*, 417 S.W.3d 585, 590 (Tex.App.-El Paso 2013, no pet.), *citing Serrano v. Francis Properties I, Ltd.,* 411 S.W.3d 661 (Tex.App.-El Paso 2013, no pet. h.); *Viasana v. Ward County,* 296 S.W.3d 652, 654 (Tex.App.-El Paso 2009, no pet.); *Martinez v. Leeds,* 218 S.W.3d 845, 848 (Tex.App.-El Paso 2007, no pet.); *Sweed v. City of El Paso,* 195 S.W.3d 784, 786 (Tex.App.-El Paso 2006, no pet.). If *pro se* litigants were not required to comply with applicable rules of procedure, they would be given an unfair advantage over parties represented by counsel. *Viasana,* 296 S.W.3d at 654.

## STANDARD OF REVIEW

A plea to the jurisdiction is a dilatory plea by which a party challenges the court's authority to determine the subject matter of the action. *Harris County v. Sykes,* 136 S.W.3d 635, 638 (Tex.2004); *Bland Independent School District v. Blue,* 34 S.W.3d 547, 554 (Tex.2000). The burden is on the plaintiff to allege facts affirmatively demonstrating that the trial court has subject matter jurisdiction. *Texas Department of Criminal Justice v. Miller,* 51 S.W.3d 583, 587 (Tex.2001); *City of El Paso v. Mazie's, L.P.,* 408 S.W.3d 13, 18 (Tex.App.-El Paso 2012, pet. denied). Whether a party has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction is a question of law which is subject to *de novo* review. *Miranda,* 133 S.W.3d at 226; *Mazie's,* 408 S.W.3d at 18. Likewise, whether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction is also a question of law subject to *de novo* review. *Miranda,* 133 S.W.3d at 226.

When a plea to the jurisdiction challenges the existence of jurisdictional facts, the appellate court considers relevant evidence on that issue even where those facts may implicate the merits of the cause of action. *City of Waco v. Kirwan,* 298 S.W.3d 618, 622 (Tex.2009); *Miranda,* 133 S.W.3d at 227. The standard of review for a jurisdictional plea based on evidence

"generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Miranda,* 133 S.W.3d at 228. Under this standard, when reviewing a plea in which the pleading requirement has been met, we credit as true all evidence favoring the non-movant and draw all reasonable inferences and resolve any doubts in the non-movant's favor. *Id.* The movant must assert the absence of subject-matter jurisdiction and present conclusive proof that the trial court lacks subject-matter jurisdiction. *Id.* If the movant discharges this burden, the non-movant must present evidence sufficient to raise a material issue of fact regarding jurisdiction, or the plea will be sustained. *Id.* If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact question will be resolved by the fact finder. *Id.* at 227–28. The trial court rules on the plea to the jurisdiction as a matter of law if the relevant jurisdictional evidence is undisputed or it fails to raise a fact question on the jurisdictional issue. *Id.* at 228. Such is the case here.

## THE 2013 ELECTION

The gravamen of Taylor's appeal is that the 2013 election terminated the necessity for the Board of Managers because four of the existing trustees were voted out of office. For purposes of explaining the parties' dispute, we will provide a statement of their respective positions.

### <u>The Commissioner's Position</u>

Williams maintains that at the time of Taylor's 2013 election and continuing through the present, EPISD has been operating under the control of a Board of Managers. Thus, all of the powers normally vested in the Board of Trustees have been transferred to the Board of Managers. Pursuant to Texas Education Code, the designee ordered that not later than the second anniversary of the date the Board of Managers was appointed at the direction of the Commissioner, the Board of Managers shall order an election of members of the District Board

11

of Trustees, and that thereafter the Board of Trustees would resume all powers and duties assigned to them by law. On May 7, 2013, the members of the Board of Managers for EPISD were sworn into office. A mere four days later**, o**n May 11, 2013, an election was held for four EPISD trustee seats. *Id*. This election was ordered by the Board of Trustees and it was not the election contemplated by TEX.EDUC.CODE ANN. §39.112(e) or the TEA decision. Until Commissioner Williams takes action to remove the Board of Managers earlier, the Board's tenure will conclude after the May 2015 trustee election.

### Taylor's Position

Taylor responds that Williams cannot use §§39.112(a) and (b) to negate the requirements of §39.112(e) – the election was called and Taylor was elected on a uniform election date on which an election of district trustees may be held. The Board of Managers, having assumed all duties and responsibilities, must then complete the election procedures. By allowing the election to be held, Williams and Margo allowed the voters to elect the representative of their choice and then deprived the voters of their elected representation. Appellees had the authority to cancel the election, but chose not to and thus were mandated to fully comply with the election code. Accordingly, if Williams sought federal preclearance to suspend the previous board regarding the Voting Rights Act, then by allowing the election to occur and giving the voters their choice, Williams must have (or should have) sought federal preclearance to suspend the newly elected trustees.

### PROPRIETY OF THE PLEAS

To prevail on appeal, Taylor must successfully attack all of the grounds which could support the order granting the pleas to the jurisdiction. These include standing, immunity, mootness, requirement of a quo warranto proceeding, and failure to exhaust administrative

12

remedies. Because Issues Three and Seven are determinative, we overrule Issues One, Two, Four, Five, Six, Eight, and Nine.

## Mootness

An appellate court is prohibited from deciding a moot controversy. *See National Collegiate Athletic Association v. Jones,* 1 S.W.3d 83, 86 (Tex.1999). This prohibition is rooted in the separation of powers doctrine in the Texas and United States Constitutions that prohibits courts from rendering advisory opinions. *See National Collegiate,* 1 S.W.3d at 86. The mootness doctrine dictates that courts avoid rendering advisory opinions by only deciding issues that present a "live" controversy at the time of the decision. *City of Farmers Branch v. Ramos,* 235 S.W.3d 462, 469 (Tex.App.-Dallas 2007, no pet.), *citing Camarena v. Tex. Employment Commission,* 754 S.W.2d 149, 151 (Tex.1988). An issue becomes moot when (1) it appears that one seeks to obtain a judgment on some controversy, which in reality does not exist or (2) when one seeks a judgment on some matter which, when rendered for any reason, cannot have any practical legal effect on a then-existing controversy. *City of Farmers Branch,* 235 S.W.3d at 469. Thus, an issue may be moot if it becomes impossible for the court to grant effectual relief for any reason. *In re H & R Block Financial Advisors, Inc.,* 262 S.W.3d 896 (Tex.App.-Houston [14th Dist.] 2008, orig. proceeding); *see Williams v. Lara,* 52 S.W.3d 171, 184 (Tex.2001).

We have recently held that courts may take judicial notes of events which have occurred during an appeal. *See In re Estate of Sherman Hemsley*, 460 S.W.3d 629 (Tex.App.-El Paso 2014, pet. denied) where we said:

> At oral argument, counsel for the Thorntons proclaimed that the issue is not moot because the appellate record does not reflect that Hemsley has been buried. The Thorntons are correct that the record is silent regarding the burial, but an appellate court has the discretion to take judicial notice of adjudicative facts that are matters of public record on its own motion and for the first time on appeal. *See* TEX.R.EVID. 201(b), (c), (f); *see Office of Public Utility Counsel v. Public Utility*

13

*Commission of Texas,* 878 S.W.2d 598, 600 (Tex.1994). Generally, appellate courts take judicial notice of facts outside the record only to determine jurisdiction or to resolve matters ancillary to decisions which are mandated by law. *In re R.A.,* 417 S.W.3d 569, 576 (Tex.App.-El Paso 2013, no pet.); *SEI Business Systems, Inc. v. Bank One Texas, N.A.,* 803 S.W.2d 838, 841 (Tex.App.-Dallas 1991, no writ); *see Freedom Communications, Inc. v. Coronado,* 372 S.W.3d 621, 624 (Tex.2012) (court determined it was appropriate to take judicial notice of facts in a plea agreement because they were relevant to determination whether trial court had jurisdiction). Appellate courts are reluctant to take judicial notice of matters which go to the merits of a dispute. *In re R.A.,* 417 S.W.3d at 576; *SEI Business Systems,* 803 S.W.2d at 841.

We take judicial of the obituary published in the El Paso Times from November 18, 2012 through November 25, 2012 which stated that the funeral service for Hemsley would be on Wednesday, November 21, 2012, at Cielo Vista Church in El Paso and interment would take place at Fort Bliss National Cemetery following the funeral service. *See Hudson v. Markum,* 931 S.W.2d 336, 337 n. 1 (Tex.App.-Dallas 1996, no writ) (appellate court took judicial notice of funeral and death announcement in Dallas Morning News). Further, we take judicial notice that it was widely reported on local, state, and national news that Hemsley was buried in El Paso on November 21, 2012 at Fort Bliss National Cemetery.

*Id.* at 638-39.

By his petition, Taylor sought injunctive relief against Commissioner Williams and Board of Managers President Margo. Specifically he alleged he had been deprived of (1) the Certificate of Election; (2) the Statement of Officer; (3) the Oath of Office; and (4) the right to office. By December 6, 2013, he had obtained the relief he sought with the sole exception of the right to office. Thus, the only justiciable issue at the time of the plea hearing was whether he should have been seated following the run-off election in June 2013.

The Board of Managers returned the El Paso Independent School District to elected rule on May 18, 2015 following a duly called election. Four men, including Taylor, and three women were sworn in as District Trustees by County Judge Veronica Escobar. According to the El Paso Times, the event was attended by more than 100 people, including Commissioner Williams. Taylor has repeatedly stated his position that he did not seek money damages; he sought only injunctive equitable relief. He has now received all relief he requested and his lawsuit is moot.

14

Because Margo predicated his plea to the jurisdiction on mootness, that ground is sufficient to affirm the granting of his plea.

## **Standing**

Standing is a component of subject matter jurisdiction, cannot be waived, and can be raised for the first time on appeal. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 445–46 (Tex.1993); *Nauslar v. Coors Brewing Co.,* 170 S.W.3d 242, 248 (Tex.App.-Dallas 2005, no pet.). When considering jurisdictional issues, we construe the petition in favor of the party, and if necessary, we determine whether any evidence supports standing by reviewing the entire record. *Willis v. Marshall,* 401 S.W.3d 689, 695 (Tex.App.-El Paso 2013, no pet.), *citing Tex. Ass'n of Bus.,* 852 S.W.2d at 446.

A plaintiff must have standing to bring a lawsuit. *Austin Nursing Ctr., Inc. v. Lovato,* 171 S.W.3d 845, 848 (Tex.2005). A court has no jurisdiction over a claim made by a plaintiff who lacks standing to assert it. *See Heckman v. Williamson County,* 369 S.W.3d 137, 150–51 (Tex.2012); *see also Thomas v. Long,* 207 S.W.3d 334, 338 (Tex.2006) (a trial court properly dismisses claims over which it has no subject matter jurisdiction); *Lovato,* 171 S.W.3d at 849; *Tex. Ass'n of Bus.,* 852 S.W.2d at 443. Therefore, if a plaintiff is without standing to assert one of his claims, the court lacks jurisdiction over that claim and is required to dismiss it. *See Heckman,* 369 S.W.3d at 150–51 (also noting that plaintiff's whole action must be dismissed for want of jurisdiction if plaintiff lacks standing to bring *any* of his claims); *DaimlerChrysler Corp. v. Inman,* 252 S.W.3d 299, 304 (Tex.2008); *Noell v. Air Park Homeowners Ass'n, Inc.,* 246 S.W.3d 827, 832 (Tex.App.-Dallas 2008, pet. denied).

Standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a justiciable interest in its outcome. *Lovato,* 171 S.W.3d at 848. The general test requires

that there be a real controversy between the parties that will actually be determined by the judicial declaration sought. *Tex. Ass'n of Bus.,* 852 S.W.2d at 446; *Lovato,* 171 S.W.3d at 849. This means that litigants must be "properly situated to be entitled to [a] judicial determination." *Lovato,* 171 S.W.3d at 849.

A person who is personally aggrieved by the alleged wrong has standing to sue. *Nootsie Ltd. v. Williamson County Appraisal Dist.,* 925 S.W.2d 659, 661 (Tex.1996). A person has standing if he (1) has sustained, or is immediately in danger of sustaining, some direct injury as a result of the wrongful act of which he complains; (2) has a direct relationship between the alleged injury and claim sought to be adjudicated; (3) has a personal stake in the controversy; (4) has suffered some injury in fact, either economic, recreational, environmental, or otherwise; or (5) is an appropriate party to assert the public's interest in the matter, as well as his own. *Nauslar,* 170 S.W.3d at 249.

**To maintain its claims, a party must maintain standing throughout the proceedings, even during the pendency of the appeal**. *See, e.g., Williams v. Lara,* 52 S.W.3d 171, 184 (Tex.2001) (stating that "if a case becomes moot, the parties lose standing to maintain their claims"); *Trulock v. City of Duncanville,* 277 S.W.3d 920, 924 (Tex.App.-Dallas 2009, no pet.).

One of the predicates of Williams' plea to the jurisdiction was standing. We have already determined that the lawsuit became moot. Consequently, Taylor now lacks standing. Because Williams predicated his plea to the jurisdiction on standing, that ground is sufficient to affirm the granting of the plea.

Inasmuch as at least one ground legally supports both Willams' and Margo's pleas to the jurisdiction, we affirm the judgment below. Margo's counterclaim remains pending in the trial court and we offer no advisory opinion on its merits.

September 16, 2015

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, J., and Chew, C.J. (Senior)
Chew, C.J. (Senior), sitting by assignment