

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00290-CV

_____

IN THE ESTATE OF XAVIER GOMEZ III, DECEASED

---

On Appeal from Probate Court No. 2
Tarrant County, Texas
Trial Court No. 2019-PR00979-2

---

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Bassel

## I. Introduction

The underlying probate proceeding concerns the decedent Mr. Xavier Gomez III, who was killed in an accident while employed by Appellant Jackson Construction, Ltd. Prior to his death, Mr. Gomez had lived with Appellee Estephany Pachecano, and they had a child together. Though never formally married, Ms. Pachecano contends that she is Mr. Gomez's wife and heir because the two of them entered into a common-law marriage.

The question of whether Mr. Gomez and Ms. Pachecano were common-law spouses flows through three legal proceedings resulting from Mr. Gomez's death: (1) a workers' compensation proceeding, which was initiated to make a claim against Jackson's workers' compensation insurance and during which Ms. Pachecano agreed that she was not a legal beneficiary of Mr. Gomez; (2) a wrongful-death and survival action brought by Ms. Pachecano against Jackson in the district court; and (3) the suit below in the probate court in which Ms. Pachecano sought letters of administration for Mr. Gomez's estate and a determination that she was his wife and heir—relief that the probate court granted.

The tie that binds the three proceedings together for our purposes is Jackson's claim that Ms. Pachecano's agreement in the workers' compensation proceeding—that she was not a legal beneficiary of Mr. Gomez—precludes her from claiming in any other proceeding that she was his common-law spouse. Jackson contends that

because Ms. Pachecano is precluded from claiming that she is Mr. Gomez's spouse, she lacks standing to be a plaintiff on her own behalf in the wrongful-death action. And Jackson portrays the probate proceeding as an attempt by Ms. Pachecano to wire around this standing challenge by seeking a determination from "a friendly forum" that she was Mr. Gomez's wife and heir.

Specifically, in its single issue on appeal, Jackson challenges the probate court's judgment—finding that Ms. Pachecano is an heir—on the basis that she is precluded "from relitigating [the issue of her status as Mr. Gomez's spouse] that was determined by agreement in the prior contested [workers' compensation] proceeding." Ms. Pachecano responds that Jackson is not an interested person and therefore lacks standing to intervene in the proceedings in the probate court. We agree with Ms. Pachecano and dismiss this appeal for lack of standing.[1]

## II. Procedural and factual background

After Mr. Gomez's death, Ms. Pachecano (who was represented by counsel) sought workers' compensation death benefits for both herself and the child that she had with Mr. Gomez. In the benefits application, Ms. Pachecano described herself as Mr. Gomez's wife. Jackson's workers' compensation carrier disputed that Ms. Pachecano was entitled to benefits because it had no documentation that

---

[1]Ms. Pachecano makes a host of other arguments in support of the trial court's judgment. Because of our disposition on the issue of standing, we do not address those arguments.

Ms. Pachecano qualified as an eligible beneficiary under the applicable Division of Workers' Compensation Rule.[2]

The carrier requested a benefit review conference to determine Ms. Pachecano's entitlement to benefits.[3] Ms. Pachecano then signed a Benefit

---

[2]The form filed by the workers' compensation carrier referenced Rule 132.3(a), which provides that "[t]he surviving spouse is entitled to receive death benefits, unless subsection (b) of this section applies. The surviving spouse shall submit a certified copy of the marriage license, or satisfactory evidence of common-law marriage to the deceased employee, to the insurance carrier." 28 Tex. Admin. Code § 132.3(a) (Tex. Dep't of Ins., Eligibility of Spouse to Receive Death Benefits). The evidence showed that Mr. Gomez and Ms. Pachecano had obtained a marriage license but had never participated in a formal ceremony, that the license had either lapsed due to the passage of time or had been destroyed, and that Mr. Gomez had listed his status as single on a tax document.

[3]The Texas Labor Code describes a benefit review conference and its purpose as follows:

A benefit review conference is a nonadversarial, informal dispute resolution proceeding designed to[]

(1) explain, orally and in writing, the rights of the respective parties to a workers' compensation claim and the procedures necessary to protect those rights;

(2) discuss the facts of the claim, review available information in order to evaluate the claim, and delineate the disputed issues; and

(3) mediate and resolve disputed issues by agreement of the parties in accordance with this subtitle and the policies of the division.

Tex. Lab. Code Ann. § 410.021.

Dispute Agreement that stated, "The parties agree that [Ms.] Pachecano is not a proper legal beneficiary of Xavier Gomez, deceased, and she is not entitled to death benefits." The agreement was also signed by her representative in the workers' compensation proceeding.

Roughly at the same time that Ms. Pachecano filed the workers' compensation claim, she—as next friend of her son—filed a Rule 202 proceeding seeking the deposition of Jackson's corporate representative to investigate the circumstances of Mr. Gomez's death. Before entering into the Benefit Dispute Agreement, Ms. Pachecano—as personal representative of Mr. Gomez's estate and as next friend of her son—filed the wrongful-death action against Jackson in district court relying on the remedy in the Workers' Compensation Act that permits a wrongful-death action by a surviving spouse and heirs against an employer carrying workers' compensation

---

The Workers' Compensation Act provides that a benefit review conference may resolve a dispute between the parties and how that resolution is to be documented as follows:

(a) A dispute may be resolved either in whole or in part at a benefit review conference.

(b) If the conference results in the resolution of some disputed issues by agreement or in a settlement, the benefit review officer shall reduce the agreement or the settlement to writing. The benefit review officer and each party or the designated representative of the party shall sign the agreement or settlement.

(c) A settlement takes effect on the date it is approved by the director in accordance with Section 408.005.

*Id.* § 410.029.

insurance if the employee's death resulted from the employer's gross negligence.[4] The wrongful-death action was apparently later amended to allege that Ms. Pachecano was Mr. Gomez's spouse.[5]

A little over a year after the filing of the wrongful-death suit, Ms. Pachecano filed the heirship proceeding in the probate court that resulted in the judgment now on appeal. Ms. Pachecano filed an application that sought letters of administration and a determination that she and the child born to her and Mr. Gomez were his heirs. Ms. Pachecano claimed that she was an heir because she was Mr. Gomez's spouse.

---

[4]The Workers' Compensation Act establishes the gross-negligence exception to the principle that compensation benefits are the exclusive remedy for employee-injury and wrongful-death claims as follows:

> (a) Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee.

> (b) This section does not prohibit the recovery of exemplary damages by the surviving spouse or heirs of the body of a deceased employee whose death was caused by an intentional act or omission of the employer or by the employer's gross negligence.

Tex. Lab. Code Ann. § 408.001(a)–(b).

[5]Death claims, such as the one brought by Ms. Pachecano, are divided into two categories: survival claims and wrongful-death claims. *See In re Estate of Howard*, 543 S.W.3d 397, 401 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). With a survival claim, "a personal[-]injury action survives the injured person's death and may be prosecuted on behalf of the deceased." *Id.* at 404 (citing Tex. Civ. Prac. & Rem. Code Ann. § 71.021). On the other hand, a wrongful-death claim "is brought for the exclusive benefit of the surviving spouse, children, or parents of the deceased." *Id.* (citing Tex. Civ. Prac. & Rem. Code Ann. § 71.004(a)).

Her application noted that Mr. Gomez's estate's asset was "a potential personal[-] injury claim for injuries [he] received that led to his death." Jackson intervened in the proceeding, outlining in its plea in intervention why it contended that Ms. Pachecano had never married Mr. Gomez or was precluded from contending that she had. Jackson also filed a response to Ms. Pachecano's application and a motion for summary judgment asserting that the doctrine of collateral estoppel barred Ms. Pachecano from relitigating her claim that she was Mr. Gomez's common-law spouse. The probate court denied Jackson's motion.

Ms. Pachecano's application then proceeded to a bench trial. The reporter's record from the trial details the various legal proceedings at play and the evidence on the issue of whether Mr. Gomez and Ms. Pachecano were common-law spouses and contains testimony that both supported and undermined the existence of a common-law marriage.[6] With regard to the benefit agreement that she had signed, Ms.

---

[6]Section 2.401 of the Family Code establishes the elements of an informal marriage as follows:

> (a) In a judicial, administrative, or other proceeding, the marriage of a man and woman may be proved by evidence that:
>
>> (1) a declaration of their marriage has been signed as provided by this subchapter; or
>>
>> (2) *the man and woman agreed to be married and after the agreement they lived together in this state as husband and wife and there represented to others that they were married.*

Pachecano testified that when the workers' compensation carrier disputed her status as a beneficiary, the benefit that she and her son were receiving dropped from $600 per week for herself and her child to $300 per week as the benefit solely for her child. Ms. Pachecano testified that she signed the agreement after it was represented to her that if she signed the agreement, the benefit would return to $600 a week, and it did as a benefit paid to her son alone. After signing the agreement, Ms. Pachecano acknowledged that she no longer received a death benefit on her own behalf.

---

(b) If a proceeding in which a marriage is to be proved as provided by Subsection (a)(2) is not commenced before the second anniversary of the date on which the parties separated and ceased living together, it is rebuttably presumed that the parties did not enter into an agreement to be married.

(c) A person under 18 years of age may not:

    (1) be a party to an informal marriage; or

    (2) execute a declaration of informal marriage under Section 2.402.

(d) A person may not be a party to an informal marriage or execute a declaration of an informal marriage if the person is presently married to a person who is not the other party to the informal marriage or declaration of an informal marriage, as applicable.

Tex. Fam. Code Ann. § 2.401 (emphasis added); *see Hinojosa v. LaFredo*, No. 05-18-01543-CV, 2021 WL 2217165, at *5 (Tex. App.—Dallas June 2, 2021, pet. denied) (mem. op. on reh'g) (noting that Section 2.401 establishes the two ways that an informal or common-law marriage may be established).

The testimony on whether there was a common-law marriage created a fact question that the trial court resolved in Ms. Pachecano's favor. No findings of facts were sought. Jackson subsequently filed a notice of appeal.

## III. Analysis

As noted above, Jackson's sole issue focuses on an agreement made during the workers' compensation proceeding that was filed after Mr. Gomez's death and the effect that agreement had on Ms. Pachecano's ability to later claim that the two were married. Ms. Pachecano responds that Jackson was not an interested person as that term is defined in the Estates Code because Jackson lacked any pecuniary interest in Mr. Gomez's estate. Because Jackson was not an interested person, Ms. Pachecano's argument continues that Jackson lacked standing to intervene in the heirship proceeding that she filed. We agree that the question of whether a person is interested implicates standing. As explained below, Jackson as a defendant in a wrongful-death and survival action is not an interested person in an heirship determination; thus, Jackson lacked standing to intervene. Further, Jackson's arguments regarding why it had standing—whether an interested person or not—are unpersuasive.

**A.    A party may challenge the standing of an intervenor for the first time on appeal, and we set forth the standard that we use to analyze that challenge.**

Ms. Pachecano did not challenge Jackson's standing to intervene in the probate court. That failure, however, is not a waiver of a jurisdiction-based contention, such

as standing. *See Estate of Daniels*, 575 S.W.3d 841, 844 n.4 (Tex. App.—Texarkana 2019, pet. denied) (holding that when dealing with the question of whether a person was an interested party entitled to standing in a probate proceeding, "[b]ecause standing is implicit in subject-matter jurisdiction, it cannot be waived, may be raised at any time, and may be raised for the first time on appeal"); *In re N.L.G.*, 238 S.W.3d 828, 830 (Tex. App.—Fort Worth 2007, no pet.) (per curiam) (permitting a challenge to standing on appeal, even though the issue was not raised in the trial court). When the question of standing is raised for the first time on appeal, "we construe the petition in favor of the party, and if necessary, we determine whether any evidence supports standing by reviewing the entire record." *Taylor v. Margo*, 508 S.W.3d 12, 24 (Tex. App.—El Paso 2015, pet. denied) (first citing *Willis v. Marshall*, 401 S.W.3d 689, 695 (Tex. App.—El Paso 2013, no pet.), then citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)).

**B.      The Estates Code provides that an "interested person" has standing to oppose a probate proceeding.**

The following provisions of the Estates Code interact to show who has standing in probate matters. First, the Estates Code defines "probate proceeding" to include an heirship determination such as that sought by Ms. Pachecano. *See* Tex. Est. Code Ann. § 31.001(3) (stating that "[t]he term 'probate proceeding,' as used in this code, includes: . . . (3) an heirship determination").

The code provision entitled "Opposition in Probate Proceeding" states who may file a written opposition in a probate proceeding as follows: "A person interested in an estate may, at any time before the court decides an issue in a proceeding, file written opposition regarding the issue. The person is entitled to process for witnesses and evidence, and to be heard on the opposition, as in other suits." *Id.* § 55.001. And, in turn, the Estates Code specifies that an "interested person" or "person interested" is "an heir, devisee, spouse, creditor, or any other having a property right in or claim against an estate being administered." *Id.* § 22.018(1).

What constitutes an "estate" is

a decedent's property, as that property:

> (1) exists originally and as the property changes in form by sale, reinvestment, or otherwise;
>
> (2) is augmented by any accretions and other additions to the property, including any property to be distributed to the decedent's representative by the trustee of a trust that terminates on the decedent's death, and substitutions for the property; and
>
> (3) is diminished by any decreases in or distributions from the property.

*Id.* § 22.012.

Also, in a proceeding to declare heirship, the Estates Code specifies that an interested person may appeal the judgment. *Id.* § 202.202(b) ("At the request of an interested person, the judgment in a proceeding to declare heirship may be appealed

11

or reviewed within the same time limits and in the same manner as other judgments in probate matters.").

Appellate courts have looked to the question of whether a person is "interested" as that term is defined in the Estates Code in determining whether the person has standing to object or to participate in a probate proceeding. *See, e.g., In re Estate of Pandozy*, No. 05-19-00755-CV, 2021 WL 711500, at \*2 (Tex. App.—Dallas Feb. 22, 2021, no pet.) (mem. op.) ("In a probate proceeding, the burden is on the person whose standing is challenged to prove that she is an 'interested person.'"); *Estate of Daniels*, 575 S.W.3d at 845 ("Under the Texas Estates Code, only an "interested person" has standing to apply for letters of administration or challenge an application for letters of administration."); *In re McDonald*, 424 S.W.3d 774, 778 (Tex. App.—Beaumont 2014, orig. proceeding [mand. denied]) (per curiam) ("Resolving whether [decedent's father] has standing to participate in the probate proceedings turns on whether [decedent's father] is an 'interested person' with respect to [decedent's] estate."); *In re Estate of Forister*, 421 S.W.3d 175, 177 (Tex. App.—San Antonio 2013, pet. denied) ("In a probate proceeding, a party whose standing has been challenged must prove she has an interest in the estate."); *In re Estate of Velasco*, 214 S.W.3d 213, 216 (Tex. App.—El Paso 2007, no pet.) ("Under the Probate Code, only a party 'interested in an estate' may bring an action to challenge a proceeding.").

**C.     We conclude that Jackson was not an interested person.**

     **1.     We set forth the nature of the pecuniary interest that a person must have to be an interested person in a probate proceeding.**

In this case, Jackson is not an "heir, devisee, spouse, [or] creditor" of Mr. Gomez's estate. *See* Tex. Est. Code Ann. § 22.018(1). Jackson makes no argument that it is.

Without falling into one of those categories, the question becomes one of whether Jackson has an "interest" in the estate that is a direct pecuniary interest. One of our sister courts recently described the characteristics of such an interest:

> The person's "interest" must be a pecuniary interest in the estate that will be affected by the outcome of the proceeding. *Ferreira v. Butler*, 575 S.W.3d 331, 334–35 (Tex. 2019); *see Logan v. Thomason*, 202 S.W.2d 212, 215 (Tex. 1947) ("[T]he burden is on every person contesting a will, and on every person offering one for probate, to allege, and, if required, to prove, that he has some legally ascertained pecuniary interest, real or prospective, absolute or contingent, which will be impaired or benefited, or in some manner materially affected, by the probate of the will."); *In re Estate of Adams*, No. 14-12-00064-CV, 2013 WL 84925, at *3 (Tex. App.—Houston [14th Dist.] Jan. 8, 2013, no pet.) (mem. op.) ("The burden is on every person contesting a will to allege and, if required, to prove that she has some legally ascertainable pecuniary interest, real or prospective, absolute or contingent, that will be impaired or benefited, or in some manner materially affected, by the probate or defeat of the will."). "In the absence of such an interest, a contestant is a mere meddlesome intruder, and it is not the policy of the State of Texas to permit those who have no interest in a decedent's estate to intermeddle therein." *Estate of Adams*, 2013 WL 84925, at *3.

*Brashear v. Dorai*, No. 14-19-00194-CV, 2020 WL 5792304, at *3 (Tex. App.—Houston [14th Dist.] Sept. 29, 2020, no pet.) (mem. op.).

Ms. Pachecano cites *In re Davidson* to argue that Jackson lacked the necessary pecuniary interest to "meddle" in the heirship proceeding. 485 S.W.3d 927 (Tex. App.—Tyler 2016, orig. proceeding). In *Davidson*, the plaintiff (who was the executor of the estate of Stone Haynes) sued the defendant (who was proceeding individually and as independent executrix of the estate of Gary L. Davidson) to recover a note owed by the defendant, and the defendant moved to transfer venue of the probate proceeding to her home county. *Id.* at 929. The motion was denied, and when the defendant challenged the denial of the transfer motion by mandamus, the plaintiff challenged the defendant's standing to seek a transfer because she was not an interested person. *Id.* The *Davidson* court rejected the defendant's contention that she was a "creditor" of the estate as that term is used in Section 22.018(1). *Id.* at 930–31. The court then turned to the question regarding whether the defendant had the necessary pecuniary interest in the estate and decided that she did not:

> [Defendant] states that she is in possession of money or property from which the alleged debt will be satisfied if [plaintiff] prevails in his suit. And she asserts that "the venue [of plaintiff's] suit has a direct impact on her pecuniary interest therein." More specifically, she contends that "[l]itigation in a forum distant from [her] residence increases the cost of litigation, the ease with which [she] can prosecute [her] defense to the litigation[,] and [her] prospect for a satisfactory conclusion thereof."
>
> By these statements, [defendant] explains her reasons for wanting to transfer venue to San Augustine County and the effect that a judgment against her in [plaintiff's] suit will have on her personal financial situation and the condition of Gary's estate. But she does not state facts that show she has a pecuniary interest in Stone Haynes's estate.

14

*Id.* at 931–32.  We agree with Ms. Pachecano that *Davidson* stands for the proposition that being a defendant in litigation brought by the representative of an estate does not make the defendant an interested person.  But as outlined below, we also support our holding with cases from Texas and other states that specifically address the question of whether the defendant in a wrongful-death action has standing as an interested person in a probate proceeding.

> **2.    We set forth the Texas and out-of-state authorities holding that a defendant in a wrongful-death suit does not have standing in a probate proceeding as an interested person.**

> **a.    The Texas authority**

Eighty years ago, the El Paso Court of Appeals dealt with a bill-of-review proceeding filed by a defendant in an earlier filed wrongful-death action challenging a prior order entered by a probate court appointing a temporary administratrix.  *See Appleby v. Tom*, 170 S.W.2d 519 (Tex. App.—El Paso 1942, no writ).  The administratrix had previously filed a wrongful-death action in New Mexico.  *Id.* at 520.  The administratrix challenged whether the defendant in the wrongful-death action had a sufficient interest to bring its challenge to her appointment as administratrix.  *Id.*

At the time *Appleby* was decided, the statutes governing probate proceedings referenced "person interested," but there was no statutory definition of who an interested person was.  *Id.* at 520 (citing Tex. Rev. Civ. Stats. Ann. arts. 3315, 5534).  The El Paso Court of Appeals referenced the case-law derived definition as follows: "The expression, 'person interested,' as used in the statute, includes only him, who

15

either absolutely or contingently is entitled to share in the estate or the proceeds thereof, as husband and wife, legatee, next of kin, heir, devisee, assignee, grantee[,] or otherwise, except as a creditor." *Id.* (citing *Pena y Vidaurri's Estate v. Bruni*, 156 S.W. 315, 316 (Tex. App.—San Antonio 1913, writ ref'd)). Thus, the definition of "person interested" in *Appleby* roughly mimics the definition of "interested person" now found in the Estates Code. *Compare id.*, *with* Tex. Est. Code Ann. § 22.018(1).

*Appleby* then discussed a Supreme Court of Iowa opinion that was mentioned in the *Bruni* opinion *Appleby* cited and the rationale of the Iowa court regarding why an entity sued by an administrator is not an interested person who could challenge an administrator's appointment. 170 S.W.2d at 520 (citing *Chi., B. & Q. Ry. Co. v. Gould*, 20 N.W. 464, 466 (Iowa 1884)). *Appleby* detailed why the Supreme Court of Iowa held as it did:

> The court there had under consideration the petition of the Railway Company to revoke letters of administration in a situation very similar to the instant case, wherein the company had been sued by the administrator. The statute provided such a suit might be brought "by any person interested in the estate." Code 1882, § 2497. It was held the company had no such interest as is contemplated by the statute, and said: "The interest contemplated by the statute is a right to benefits from the estate which prompts the person to act for preserving its assets, increasing their value, and directing their disposition and appropriation. Surely, the statute does not in this provision contemplate one whose interest would be promoted in the destruction of the assets. His interest would be in conflict with the rights of the estate and its beneficiaries. He could not be 'interested in the estate' in the sense of the expression as it is used in the statute just cited. The plaintiff has an interest to defeat the claim which the estate holds against it. This interest prompts it to resist the claim, and if it is successful[,] it will destroy what is now regarded as property. It is absurd to say that [a] plaintiff is 'interested in

16

the estate' in any other way than as a litigant is interested to defeat the claim of his adversary. Its interest is of the character of that which an enemy feels who seeks the destruction of his foe."

*Id.*

Contrasting the Iowa opinion to a much-maligned and easily distinguishable Texas Court of Civil Appeals' holding, the El Paso Court affirmed the dismissal of the bill-of-review proceeding brought by the defendant in the wrongful-death action. *Id.* at 520–21 (discussing *Cooper v. Gulf, Colo. & Santa Fe Ry. Co.*, 93 S.W. 201, 202–06 (Tex. App.—Dallas 1906, writ ref'd)).[7]

### b.    The out-of-state authorities

A number of courts outside of Texas have held that a defendant in a wrongful-death case is simply not an interested person with standing to interfere in a probate proceeding:

- The Supreme Court of Wyoming addressed the question of standing when Halliburton Energy Services sought to intervene in a probate proceeding to

---

[7] *Appleby* noted that *Cooper* relied on a broad statutory provision allowing an appeal by any anyone aggrieved by a judgment of the county court and not the narrower statute dealing with probate jurisdiction analyzed by *Appleby*. *Id.* at 520. Further, the writ notation on *Cooper* is "writ ref'd." However, in 1906 that notation did not carry the significance it carries now. As a Texas Supreme Court justice noted in a concurring opinion in 1917, "[t]he truth is that in no instance does a refusal by the Supreme Court of a writ of error necessarily or conclusively carry an approval by that court of the opinion of the Court of Civil Appeals." *Terrell v. Middleton*, 191 S.W. 1138, 1139 (Tex. 1917) (Hawkins, J., concurring). The significance of the notation changed in 1927 to denote approval of the lower court's reasoning by the Texas Supreme Court. *Texas Rules of Form: The Greenbook* Appendix E n.2 (Texas Law Review Ass'n ed., 14th ed. 2018).

challenge the appointment of a personal representative for an estate. *See*

*Halliburton Energy Servs. v. Gunter*, 167 P.3d 645, 648 (Wyo. 2007). The

Supreme Court of Wyoming concluded that the district court, whose order

it reviewed, had acted properly in denying the intervention:

> The district court properly analyzed and resolved the issue of standing against Halliburton in this case. Following the concepts outlined above, the district court concluded that Halliburton had "no genuine legal interest in the probate court's appointment of [the] personal representative." Once again, we agree with the district court. Halliburton's "personal stake" was in its defense of the wrongful[-]death action, not in the probate court's appointment of a personal representative.

*Id.* at 649.

- A Washington court of appeals dealt with an attempt by a doctor, who was

  sued in a wrongful-death action for malpractice, to challenge the probate of

  a will. *See Cassell v. Portelance*, 294 P.3d 1, 4 (Wash. Ct. App. 2012). The

  court rejected the doctor's claim of standing with the following holding:

  > A will contest can [be] initiated only by a person "interested" in the will. . . . The judge erroneously ruled that the term "interested" was broad enough to include [the doctor's] interest, as a wrongful[-]death defendant, in establishing that [the personal representative named] Cassell was not lawfully serving as the estate's personal representative when she commenced the suit against him. Only an individual who possesses a "direct, pecuniary interest" in the devolution of the testator's estate may contest a will. *In re Estate of O'Brien*, 13 Wash.2d 581, 591, 126 P.2d 47 (1942) (executor of earlier will who attempted to challenge a later will on grounds of undue influence and lack of testamentary capacity was not authorized to initiate a will contest).

*Id.* (footnote omitted).

- The Supreme Court of Oklahoma dealt with whether a nursing home that was a wrongful-death defendant could contest the appointment of a personal representative in a probate proceeding. *See Murg v. Barnsdall Nursing Home*, 123 P.3d 21 (Okla. 2005). The Supreme Court of Oklahoma held that the nursing home did not have standing to make its challenge:

  > In the matter before us, [the nursing-home defendant] is not a proper party to challenge Murg, Jr.'s appointment [as personal representative]. [The nursing-home defendant] is not an interested party as a statutory heir of the decedent, . . . nor is it eligible to petition for letters in its own right . . . . A third party with no connection to the deceased is not an interested party, for purposes of contesting the appointment of an administrator of a deceased's estate. [The nursing-home defendant] fails to cite any authority for its proposition that it has standing to contest a petition praying for letters of administration. To allow [the nursing-home defendant] to contest and defeat Murg, Jr.'s appointment as Special Personal Representative would be tantamount to allowing [the nursing-home defendant] unilaterally to absolve itself of any and all potential liability for the decedent's demise, without ever addressing the merits of the wrongful[-] death action. Such a result is contrary to the express intent set out by the [legislature] in the statutes that list the heirs who may contest such appointments, as well as the statutes pertaining to the appointment of a special personal representative and what constitutes an estate, for purposes of such appointment. Murg, Jr., is an heir at law to the decedent's estate. He has a beneficial interest therein, and to allow a third[-]party corporate entity to protest his appointment circumvents not only the letter of the law, but its spirit, as well. We hold that [the nursing-home defendant] is not an "interested party" in the probate of the decedent's estate, and further hold that [the nursing-home defendant] has no standing to contest the appointment of Murg, Jr., as Special Personal Representative. The potential wrongful[-] death action on behalf of decedent's estate constitutes a potential debt owed by [the nursing-home defendant] to the decedent's

19

estate, necessitating the need for a special personal representative to pursue it.

*Id.* at 30.

The previously cited cases dealt only with who lacked standing to challenge the appointment of an estate representative. The Supreme Court of Maine dealt with a situation even more analogous to our case when it addressed the standing of wrongful-death defendants to challenge an heirship determination. *See Estate of Thorne*, 704 A.2d 315, 317–18 (Me. 1997). *Estate of Thorne* explained why the defendants lacked standing to interfere with that determination as follows:

> The [wrongful-death defendants] fare no better in seeking to participate in the probate proceedings as "interested person[s]." Participation in a formal probate settlement of an estate is limited to "interested person[s]." 18-A M.R.S.A. § 3-1001 (1981). "Interested person" is defined as
>
> > heirs, devisees, children, spouses, creditors, beneficiaries[,] and any others having a property right in or claim against a trust estate or the estate of a decedent, ward[,] or protected person which may be affected by the proceeding. It also includes persons having priority for appointment as personal representative, and other fiduciaries representing interested persons . . . [.] The meaning as it relates to particular persons may vary from time to time and must be determined according to the particular purposes of, and matter involved in, any proceeding.
>
> 18-A M.R.S.A. § 1-201(20) (1981).
>
> The statutory definition of "interested person" does not purport to provide an exhaustive list of recognized interests. It does, however, limit participation in probate proceedings to persons having an interest in the estate at issue. The last sentence of the statutory provision does not broaden the definitional reach of "interested person[."] Rather it

allows the court to determine the sufficiency of a party's interest relative to the particular probate proceeding. It is thus possible that one may be an "interested person" for the purpose of one particular probate proceeding but not another. *See Estate of Davis*, 219 Cal. App. 3d 663, 268 Cal. Rptr. 384, 388 (1990). An interested person, however, will always possess an interest in the estate itself.

> The determination of [decedent's] heirs will affect on whose behalf the wrongful[-]death action may be brought and consequently may affect the determination of damages in that action. The sole interest of the [wrongful-death defendants] in the determination of [decedent's] heirs is the minimization of the extent of their potential liability in the wrongful[-]death action. They attempt to serve this interest by advocating the heirship rights of the heirs most likely to recover the least amount of damages in the wrongful[-]death action. Their interest is not a "property right in or claim against" [decedent's] estate. The [wrongful-death defendants] fall outside the scope of section 1-201 and lack standing as "interested parties" to participate in the determination of [decedent's] heirs.

*Id.* (footnote omitted).

### 3. Jackson lacks the direct pecuniary interest to make it an interested party.

As the foregoing demonstrates, to have standing in a probate proceeding, a party must be an interested person. *See, e.g.*, *Estate of Daniels*, 575 S.W.3d at 845; *McDonald*, 424 S.W.3d at 778; *Estate of Velasco*, 214 S.W.3d at 216. The definition of "interested person" and the case law interpretations of it require a direct pecuniary interest to show the necessary interest. *See* Tex. Est. Code Ann. § 22.018(1); *Brashear*, 2020 WL 5792304, at *3. As the various cases that we have cited demonstrate, being a defendant in a suit, and more specifically, a defendant in a wrongful-death-action

21

suit does not create the direct pecuniary interest that creates standing as an interested person. *See Estate of Thorne*, 704 A.2d at 317–18.

### 4. We reject Jackson's arguments regarding why it should have standing.

Jackson, in its reply brief, never tells us why it is an interested person. Instead, Jackson tries to argue around the issue. In essence, Jackson's argument is that it has some interest in the heirship determination, so it must have standing.[8] While it is true that Jackson may have some manner of interest, again, our question is whether Jackson has standing as an interested person, and the specific arguments that Jackson makes are not persuasive.

Jackson first relies on the use of the word "may" in the portion of Estates Code Section 55.001 that states that "[a] person interested in an estate *may* . . . file written opposition regarding the issue." Tex. Est. Code Ann. § 55.001 (emphasis added). Jackson attempts to leverage the use of the word "may" into the following argument: "The plain statutory language provides that a person with an 'interest in the estate' *may* file an opposition and be heard as a party, but the language does not

---

[8]Jackson states that it "is a party interested in the heirship determination and thus has standing" without anything more. Yet, Jackson also states that it "did not intervene to be heard regarding the estate's administration and does not claim an interest in the estate." This leaves little for Jackson to stand on.

preclude intervention by a party that can show another interest in a particular matter before the Probate Court."[9]

The construction argued for by Jackson is not logical. In essence, its argument is that because one group with a particular characteristic is empowered to take an action, the provision should then be read to also permit anyone to take the same action. To the contrary, the logical reading of the statute is one of exclusion in which the language defines who is empowered to take the act, and that limited set excludes those outside the set from acting.

Jackson also argues that it has standing under the general test for standing and cites *Texas Association of Business*. 852 S.W.2d at 446 ("The general test for standing in Texas requires that there (a) shall be a real controversy between the parties, which (b) will be actually determined by the judicial declaration sought."). But here, the Estates Code provides the framework for standing. *See Young v. Bella Palma, LLC*, No. 14-17-00040-CV, 2022 WL 578442, at *8 (Tex. App.—Houston [14th Dist.] Feb. 22, 2022, no pet.) (mem. op.) (stating that "[t]o have standing, a plaintiff must have suffered an injury in fact that is traceable to the defendant's conduct and likely to be redressed by the requested relief. When a statute confers standing, the statute itself

---

[9]This case, however, is unlike *Estate of Howard*—a case mentioned in the parties' briefing—in which the probate court, not the district court, heard the underlying wrongful-death and survival action. 543 S.W.3d at 399.

23

provides the framework for the standing analysis" (citations omitted)).[10]   Jackson's

arguments thus do not overcome our determination that Jackson lacked standing in

the probate proceeding.

## IV.  Conclusion

Having determined that Jackson lacked standing to contest the heirship

determination, we dismiss this appeal.  *See Estate of Velasco*, 214 S.W.3d at 217

("Having determined that [appellant] lacks standing to contest this administration, . . .

we dismiss this appeal.").

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered:  July 21, 2022

---

[10]Jackson also argues that even if it lacked standing to participate in the heirship proceeding, it is free to challenge Ms. Pachecano's status as Mr. Gomez's common-law spouse in the wrongful-death action.  That issue is not before us.